**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT R. TOLAN, MARIAN TOLAN,** | § | |
| **BOBBY TOLAN, AND** | § | |
| **ANTHONY COOPER,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:09-1324** |
| | § | |
| **JEFFREY WAYNE COTTON;** | § | |
| **JOHN C. EDWARDS;** | § | |
| **RANDALL C. MACK, CHIEF OF** | § | |
| **POLICE; BYRON HOLLOWAY,** | § | |
| **ASSISTANT CHIEF OF POLICE;** | § | |
| **CYNTHIA SIEGEL, MAYOR;** | § | |
| **BERNARD SATTERWHITE, CITY** | § | |
| **MANAGER; THE CITY OF BELLAIRE;** | § | |
| **AND THE BELLAIRE POLICE** | § | |
| **DEPARTMENT,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS EDWARDS' AND COTTON'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................... iv

TABLE OF EXHIBITS ................................................................................. vii

INTRODUCTION ..........................................................................................1

SUMMARY OF RELEVANT AND DISPUTED MATERIAL FACTS .......................................2

APPLICABLE SUMMARY JUDGMENT STANDARDS ..........................................................10

ARGUMENT AND AUTHORITIES .............................................................................11

    I.     SERGEANT COTTON IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS
           AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY....................................12

          A.     Summary Judgment Must be Denied Because there are
                Genuine Issues of Material Fact Concerning Whether Sergeant
                Cotton's Use of Deadly Force Violated Robbie Tolan's Clearly
                Established Constitutional Rights in an Objectively
                Unreasonable Manner ...............................................................12

               1.     *Robbie Tolan Has Alleged Violations of His
                     Constitutional Rights* ...................................................13

               2.     *Robbie Tolan's Constitutional Rights Were Clearly
                     Established at the Time of Deprivation* .........................13

                3.     *Genuine Issues of Material Fact Exist as to Whether
                     Sergeant Cotton's Use of Deadly Force was Objectively
                     Reasonable* ...................................................................14

          B.     Summary Judgment Must Be Denied Because there are
                Genuine Issues of Material Fact Concerning Whether Sergeant
                Cotton's Use of Force Violated Marian Tolan's Clearly
                Established Constitutional Rights in an Objectively
                Unreasonable Manner ...............................................................20

                1.     *Marian Tolan Has Alleged Violations of her
                       Constitutional Rights* ...................................................20

                 2.     *Marian Tolan's Constitutional Rights were Clearly
                         Established at the Time of Deprivation* .........................21

3.     *Genuine Issues of Material Fact Exist as to Whether Sergeant Cotton's Use of Excessive Force was Objectively Reasonable* ...................................................................21

C.     Summary Judgment Must be Denied Because there are Genuine Issues of Material Fact Concerning Whether Sergeant Cotton Violated Plaintiffs' Rights to Equal Protection of the Law ...........................................................................................23

II.     OFFICER EDWARDS IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY...................................................25

A.     Plaintiffs Have Alleged Violations of their Constitutional Rights ..........................................................................................26

B.     Plaintiffs' Constitutional Rights were Clearly Established at the Time of Deprivation.............................................................................26

C.     Genuine Issues of Material Fact Exist as to Whether Officer Edwards' Conduct was Objectively Reasonable .......................................26

CONCLUSION AND PRAYER ............................................................................29

CERTIFICATE OF SERVICE ..............................................................................30

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Anderson v. Creighton,*
    483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)...................................................11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)...................................................11

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...................................................10

*Graham v. Connor,*
    490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).........................................13, 27

*Harlow v. Fitzgerald,*
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)...................................................10

*Malley v. Briggs,*
    475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)...................................................12

*Plyler v. Doe,*
    457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982).........................................23, 27

*Saucier v. Katz,*
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)...................................................................................................................................11

*Siegert v. Gilley,*
    500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)...............................................10

*Tennessee v. Garner,*
    471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)........................................................15

*Terry v. Ohio,*
    392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).......................................................27

**CIRCUIT COURTS OF APPEAL CASES**

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,*
    271 F.3d 624 (5th Cir. 2001) ..........................................................................................11

*Bazan* ex rel. *Bazan v. Hidalgo County,*
    246 F.3d 481 (5th Cir. 2001) ....................................................................10, 11, 16, 23

*Coleman v. Houston Indep. Sch. Dist.*,
    113 F.3d 528 (5th Cir.1997) ...................................................................24, 27, 28, 29

*Evans v. City of Houston*,
    246 F.3d 344 (5th Cir. 2001) ......................................................................................11

*Goodson v. City of Corpus Christi*,
    202 F.3d 730 (5th Cir. 2000) .....................................................................................27

*Harper v. Harris County, Tex.*,
    21 F.3d 597 (5th Cir. 1994) ..............................................12, 13, 15, 18, 21, 27

*Honore v. Douglas*,
    833 F.2d 565 (5th Cir. 1987) ....................................................................................11

*Ikerd v. Blair*,
    101 F.3d 430 (5th Cir. 1996) ..............................................................................14, 21

*Manis v. Lawson*,
    585 F.3d 839 (5th Cir. 2009) ..............................................................................15, 16

*Marshall v. Columbia Lea Reg'l Hosp.*,
    345 F.3d 1157 (10th Cir. 2003) .................................................................24, 27, 28, 29

*Ontiveros v. City of Rosenberg, Tex.*,
    564 F.3d 379 (5th Cir. 2009) ....................................................................................10

*Reyes v. Bridgewater*,
    362 Fed. App'x 403 (5th Cir. 2010) .......................................................................15

*Salas v. Carpenter*,
    980 F.2d 299 (5th Cir. 1992) ....................................................................................10

*TIG Ins. Co. v. Sedgwick James of Wash.*,
    276 F.3d 754 (5th Cir. 2002) ....................................................................................11

*Tompkins v. Vickers*,
    26 F.3d 603 (5th Cir.1994) ...................................................................24, 27, 28, 29

*Wernecke v. Garcia*,
    591 F.3d 386 (5th Cir. 2009) ....................................................................................11

*Williams v. Bramer*,
    180 F.3d 699 (5th Cir. 1999) ....................................................................................24

**DISTRICT COURT CASES**

*Senu-Oke v. Jackson State Univ.*,
     521 F. Supp. 2d 551 (S.D. Miss. 2007) *aff'd*, 283 F. App'x 236 (5th Cir.
     2008) ................................................................................................24, 27, 28, 29

**FEDERAL CONSTITUTION**

U.S. CONST. Amend. IV ..............................................................................................13

U.S. CONST. Amend. XIV ......................................................................................23, 27

**RULES**

FED. R. CIV. P. 56(c)................................................................................................10

**SECONDARY SOURCES**

Martin A. Schwartz and Kathryn R. Urbonya, *Section 1983 Litigation*,
     FED. JUD. CTR. (2d ed. 2008) ...........................................................................10

## TABLE OF EXHIBITS[1]

EXHIBIT 1        Excerpts of Jeffrey Cotton's Deposition Testimony

EXHIBIT 2        Excerpts of Jeffrey Cotton's Trial Testimony

EXHIBIT 3        Excerpts of Robbie Tolan's Trial Testimony

EXHIBIT 4        Excerpts of John Edwards' Trial Testimony

EXHIBIT 5        Excerpts of John Edwards' Deposition Testimony

EXHIBIT 6        Excerpts of Robbie Tolan's Deposition Testimony

EXHIBIT 7        Excerpts of Anthony Cooper Deposition Testimony

EXHIBIT 8        Excerpts of Bobby Tolan Trial Testimony

EXHIBIT 9        Excerpts of Marian Tolan Trial Testimony

EXHIBIT 10       Photographs of Marian Tolan

EXHIBIT 11       Declaration of Chasen Goudeau

EXHIBIT 12       Excerpts of Albert Rodriguez's Expert Report

EXHIBIT 13       Declaration of Robbie Tolan

EXHIBIT 14       Photographs of Robbie Tolan

EXHIBIT 15       Affidavits Regarding Racial Profiling and Discrimination

EXHIBIT 16       Excerpts of Dr. Lewinski's Deposition Testimony

EXHIBIT 17       Excerpts of Albert Rodriguez's Deposition Testimony

EXHIBIT 18       Order on Motion for Sanctions, *Ibarra v. Harris County, Tex.*, No. H-04-00186
(March 2, 2005)

EXHIBIT 19       Declaration of Geoffrey Berg

---

[1] Plaintiffs expressly incorporate each Exhibit as if fully set forth herein.

Plaintiffs Robert R. Tolan, Marian Tolan, Bobby Tolan, and Anthony Cooper file this opposition to Defendants John C. Edwards' and Jeffrey Wayne Cotton's motion for summary judgment as follows:

## INTRODUCTION

1.     In the early morning hours of December 31, 2008, Defendant Jeffrey Wayne Cotton intentionally shot and attempted to kill an unarmed man on his own front porch, in front of his parents and his cousin.  Cotton's unjustified shooting of Robbie Tolan was the culmination of a series of events set into motion by Defendant John C. Edwards' unconstitutional racial profiling and discrimination.

2.     At the heart of this dispute is the Defendants' contention that Robbie Tolan reached for his waistband while jumping to his feet, placing Cotton in reasonable fear for his life, thus justifying his shooting.  In their Motion for Summary Judgment, the Defendants represent to the Court that the facts are undisputed.  Cotton begs to differ:

> Q.     So [the Tolans'] testimony is [Robbie Tolan] didn't have his hand near his waistband, wasn't doing anything that appeared or could have been interpreted as reaching for a weapon. That's what they say.
>
> A.     Okay.
>
> Q.     You disagree?
>
> A.     Yes.
>
> . . .
>
> Q.     [The Tolans'] testimony is [Robbie Tolan] was on a knee, correct?
>
> A.     Some of their testimony, yes.
>
> Q.     Okay.  You believe there's some conflict in their testimony?
>
> A.     Yes.

. . .

Q.     Well, their statement is different than your statement.  Do you understand
       that?

A.     I don't think I can answer entirely -- I suppose there are some things in
       their statement that are different.

Ex. 1, Cotton Dep. 72:18–24, 73:3–23.

3.     Not only have the opposing parties presented different versions of the facts, at
least one Defendant has disputed the material facts about which he testified previously.  During
his criminal trial, Cotton testified that he shot Robbie Tolan because Tolan was "digging" in his
waistband.  Ex. 2, Cotton Trial Tr. vol. 3, 127:13–17.  During his deposition, however, Cotton
could not agree with Cotton, explaining: "I don't mean that to mean, though, that he was
reaching down inside of his pants necessarily.  That's not -- that wouldn't be accurately what I
saw."  Ex. 1, Cotton Dep. 66:24–67:2.  In light of this dispute, summary judgment would have to
be denied even if Cotton moved for it against Cotton.

4.     Ultimately, Defendants have requested that this Court enter judgment on their
affirmative defense of qualified immunity as a matter of law so that they may escape liability for
their actions in summary fashion.  Because the evidentiary record unquestionably establishes that
material facts concerning Cotton's and Edwards' conduct on December 31, 2008 are in dispute,
however, summary judgment must be denied and Plaintiffs' claims must proceed to trial.

## SUMMARY OF RELEVANT AND DISPUTED MATERIAL FACTS

5.     On the evening of December 30, 2008, Plaintiffs Robert R. Tolan ("Robbie
Tolan") and Anthony Cooper went out to dinner, met with friends for a few hours, and, after
picking up fast food from Jack-In-The-Box, returned home at approximately 1:50 a.m. on
December 31, 2008.  Ex. 3, Robbie Tolan Tr. vol. 2, 137–140.  Robbie Tolan and Anthony

2

Cooper were followed home by Defendant John C. Edwards, a member of the Bellaire Police Department.  Ex. 4, Edwards Trial Tr. vol. 1, 25:23–26:20.  While following Robbie Tolan's car, Edwards ran a license plate number and received a report that a car was stolen.  *Id.* at 28:13–31:9; Ex. 5, Edwards Dep. 26:5–28:1.  The license plate number Edwards entered, however, did not match Robbie Tolan's license plate number.  Ex. 4, Edwards Trial Tr. vol. 1, 29:25–30:13.  It is undisputed that Robbie Tolan was not driving a stolen vehicle.  Ex. 1, Cotton Dep. 7:19–8:10.

6.    Edwards called for backup, reporting that he had a stolen vehicle occupied by two individuals.  Ex. 4, Edwards Trial Tr. vol. 1, 32:22–33:4; Ex. 5, Edwards Dep. 29:1–14.  After Robbie Tolan parked his car on the curb outside of his house—and while Robbie Tolan and Anthony Cooper were standing outside of the car[2]—Edwards drove by Robbie Tolan's car before turning around in the cul-de-sac at the end of the street, where he parked and watched the car while waiting for backup to arrive.  Ex. 4, Edwards Trial Tr. vol. 1, 32:22–33:4; Ex. 5, Edwards Dep. 28:2–30:3; Ex. 6, Robbie Tolan Dep. 13:17–15:5.  During this time, Edwards did not confirm that the car was actually stolen.  Ex. 4, Edwards Trial Tr. vol. 1, 32:7–17.

7.    At approximately 1:53 a.m., as Robbie Tolan and Anthony Cooper began walking from their car toward their house, Edwards requested immediate assistance before exiting his vehicle to confront Robbie Tolan and Anthony Cooper.  Ex. 4, Edwards Trial Tr. vol. 1, 35:13–37:22; Ex. 5, Edwards Dep. 31:5–20.  With his gun drawn, but without identifying himself as a police officer, Edwards yelled at Robbie Tolan and Anthony Cooper to get on the ground.  Ex. 7, Anthony Cooper Dep. 47:2–20, ***contra***, Ex. 5, Edwards Dep. 32:18–22.  In response to Edwards' statement that the car they exited was stolen, Robbie Tolan stated that the car was not stolen and

---

[2] Edwards testified that he did know either Robbie Tolan's or Anthony Cooper's race until after Robbie Tolan was shot.  Ex. 5, Edwards Dep. 24:24–25:16.  Robbie Tolan testified, however, that he was fully illuminated by Edwards' headlights as he stood outside his car as Edwards drove down the street.  Ex. 6, Robbie Tolan Dep. 13:17–15:5.

that he and Anthony Cooper had not done anything wrong.  Ex. 3, Robbie Tolan Trial Tr. vol. 2, 145:2–11; Ex. 4, Edwards Trial Tr. vol. 1, 38:20–39:23; Ex. 8, Bobby Tolan Trial Tr. vol. 2, 63:17–22; Ex. 9, Marian Tolan Trial Tr. vol. 2, 93:14–19, 96:5–15.

8.     Although Robbie Tolan initially refused to comply with Edwards' request that he get on the ground—because he assumed that Edwards had run his license plate correctly and actually knew that the car was not stolen—Robbie Tolan began to get on the ground.  *See* Ex. 6, Robbie Tolan Dep. 16:14–17:8, 45:16–20, 152:2–8, *contra*, Ex. 4, Edwards Trial Tr. vol. 1, 47:10–14, 60:17–21.

9.     Hearing loud voices right outside, Plaintiffs Bobby Tolan and Marian Tolan exited the front door of their home to check on their son.  Ex. 8, Bobby Tolan Trial Tr. vol. 2, 63:17–64:7; Ex. 9, Marian Tolan Trial Tr. vol. 2, 93:14–97:1.  Both Bobby Tolan and Marian Tolan were wearing pajamas.  Ex. 1, Cotton Dep. 48:9–18; Ex. 4, Edwards Trial Tr. vol. 1, 45:9–16.

10.     As Bobby Tolan and Marian Tolan walked outside, they heard that Robbie Tolan and Anthony Cooper were accused of stealing a car and saw an individual pointing a flashlight and a gun.  Ex. 8, Bobby Tolan Trial Tr. vol. 2, 54:25–65:3; Ex. 9, Marian Tolan Trial Tr. vol. 2, 96:16–97:1.  Although he was unsure what was happening, Bobby Tolan told Robbie Tolan and Anthony Cooper to be quiet and to do as they were told.  Ex. 4, Edwards Trial Tr. vol. 1, 48:25–49:7; Ex. 8, Bobby Tolan Trial Tr. vol. 2, 65:17–23.  Both Robbie Tolan and Anthony Cooper got completely on the ground.  Ex. 4, Edwards Trial Tr. vol. 1, 47:15–48:5.  Robbie Tolan was on his stomach on his front porch with his arms outstretched in front of his head.  *Id.* at 47:15–22; Ex. 1, Cotton Dep. 49:23–50:20; Ex. 5, Edwards Dep. 42:7–14.

11.     Bobby Tolan complied with Edwards' request that he get up against a Suburban parked in the Tolans' driveway.  Ex. 1, Cotton Dep. 55:18–56:11; Ex. 8, Bobby Tolan Trial Tr. vol. 2, 66:15–67:22.

12.     Bobby Tolan told Edwards that (1) the car was not stolen, (2) Robbie Tolan was his son, (3) Anthony Cooper was his nephew, and (4) this was their home.  Ex. 3, Robbie Tolan Trial Tr. vol. 2, 147:1–8; Ex. 4, Edwards Trial Tr. vol. 1, 50:18–23; Ex. 5, Edwards Dep. 42:22–43:6, 46:13–17; Ex. 7, Anthony Cooper Dep. 52:18–25, 53:12–18, 54:10–55:5; Ex. 8, Bobby Tolan Trial Tr. vol. 2, 66:17–21; Ex. 9, Marian Tolan Trial Tr. vol 2., 99:7–11.

13.     Marian Tolan told Edwards that (1) the car was not stolen, (2) Robbie Tolan was her son, and (3) this was their home.  Ex. 4, Edwards Trial Tr. vol. 1, 50:18–23, 113:25–114:1; Ex. 5, Edwards Dep. 42:22–43:6; Ex. 7, Anthony Cooper Dep. 52:18–25, 53:12–18, 54:10–55:5; Ex. 9, Marian Tolan Trial Tr. vol. 2, 99:16–19, 100:20–24.

14.     Robbie Tolan continued telling Edwards that his car was not stolen.  Ex. 7, Anthony Cooper Dep. 50:9–19, 53:12–18, 54:10–55:5; Ex. 9, Marian Tolan Trial Tr. vol. 2, 106:7–12.

15.     Anthony Cooper told Edwards that the car was not stolen.  Ex. 7, Anthony Cooper Dep. 50:9–19, 53:12–18, 54:10–55:5.

16.     At approximately 1:54 a.m., Defendant Jeffrey Wayne Cotton, a member of the Bellaire Police Department, arrived at the Tolans' home.  After Cotton approached the Tolans' front yard with his gun drawn, Edwards informed him that the individuals lying on the ground— Robbie Tolan and Anthony Cooper—were the suspected car thieves, and that the other two individuals—Bobby Tolan and Marian Tolan—had exited the home.  Ex. 5, Edwards Dep. 42:15–21.

17.     Bobby Tolan told Cotton that (1) the car was not stolen, (2) Robbie Tolan was his son, and (3) this was their home.  Ex. 2, Cotton Trial Tr. vol. 3, 150:4–11, 158:14–16; Ex. 8, Bobby Tolan Trial Tr. vol. 2, 72:20–73:1.

18.     Marian Tolan told Cotton that (1) the car was not stolen, (2) Robbie Tolan was her son, (3) Robbie Tolan parked his car on the curb every night, and (4) they had lived in their home for fifteen years.  Ex. 1, Cotton Dep. 47:22–48:23, 54:19–55:4, 56:18–20; Ex. 2, Cotton Trial Tr. vol. 3, 150:4–11, 158:14–16.

19.     Robbie Tolan told Cotton that his car was not stolen.  Ex. 9, Marian Tolan Trial Tr. vol. 2, 106:7–12.

20.     Marian Tolan protested to Edwards and Cotton that they were making a big mistake and "we've never had anything like this happen before."  *Id.* at 100:3–101:22.  In response, Cotton holstered his gun and grabbed Marian Tolan by the arm and began moving her towards the garage.[3]  Ex. 1, Cotton Dep. 57:1–59:12; Ex. 9, Marian Tolan Trial Tr. vol. 2, 101:1–102:6.  Cotton grabbed Marian Tolan with such force that he left bruises on her arm.  Ex. 10, Photographs of Marian Tolan; Ex. 11, Decl. of Chasen Goudeau.  Marian Tolan told Cotton to get his hands off of her arm.  Ex. 1, Cotton Dep. 59:9–14.  Cotton then forcefully shoved Marian Tolan against the garage door.  *See* Ex. 9, Marian Tolan Trial Tr. vol. 2, 102:1–6, **contra**, Ex. 1, Cotton Dep. 60:7–62:12 (disagreeing as to when he pushed Marian Tolan into the garage door).

21.     In response to Cotton shoving Marian Tolan against the garage door, Robbie Tolan yelled at Cotton to get his hands off his mother, brought his arms **to his chest**, and pushed

---

[3] Cotton contradicts himself regarding whether he knew Marian Tolan was Robbie Tolan's mother at the time he grabbed her arm.  Ex. 2, Cotton Trial Tr. vol. 3, 113:21–24 (Cotton did not know that the Tolans' were Robbie Tolan's parents); *but see id.* at 150:4–11 (Cotton heard Tolans say that it was their house and their son), 158:14–16 (Cotton heard either Bobby Tolan or Marian Tolan say "that's my son").

himself up onto his knees.  *See* Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23, 150:14–17 (Robbie Tolan pushed himself up to his knees); Ex. 4, Edwards Trial Tr. vol. 1, 64:16–65:11 (Cotton pushed Marian Tolan against the garage, then Robbie Tolan yelled, then Cotton shot Robbie Tolan); Ex. 6, Robbie Tolan Dep. 100:18–101:2 (Robbie Tolan pulled his hands to his chest and pushed himself up); Ex. 7, Anthony Cooper Dep. 77:17–78:25 (same); Ex. 9, Marian Tolan Trial Tr. vol. 2, 105:5–16, 128:17–18 (Robbie Tolan was on his knees); ***contra***, Ex. 1, Cotton Dep. 60:7–62:12 (Cotton pushed Marian Tolan into garage door to get her out of the way *after* Robbie Tolan yelled), 65:2–5 (Robbie Tolan got up with "his feet under him"), 67:3–5 (Robbie Tolan appeared to be "drawing a weapon from his waistband"), 67:25–68:3 (Robbie Tolan stood up on two feet); Ex. 2, Cotton Trial Tr. vol. 3, 127:13–17 (Robbie Tolan was "digging" in his waistband), 173:1–3 (same); Ex. 4, Edwards Trial Tr. vol. 1, 66:1–4 (Robbie Tolan appeared to be charging or rushing Cotton), 67:20–22 (Robbie Tolan was running towards Cotton); Ex. 5, Edwards Dep. 53:18–56:10 (Robbie Tolan was in a hunched, charging position); Ex. 12, Rodriguez Report ¶¶ 61 (Robbie Tolan "undertook a fast movement of his hand from his waist band area"), 65 (Cotton observed Robbie Tolan "commence to charge" while "making a movement with his right hand toward his waistband"), 67 (same), 71 (Robbie Tolan reached for his waistband), 75 (same).  *See also* Ex. 1, Cotton Dep. 66:3–22 (contradicting his trial testimony that Robbie Tolan was "digging" in his waistband), 64:20–24 (admitting that he did not see Robbie Tolan pull his hands toward his midsection to push himself off the ground).

22.     Robbie Tolan did not stand up on his feet.  *See* Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23; Ex. 6, Robbie Tolan Dep. 110:9–14, 146:5–20; Ex. 9, Marian Tolan Trial Tr. vol. 2, 105:5–16, 128:17–18; ***contra***, Ex. 1, Cotton Dep. 65:2–5, 67:25–68:3.

23.     Robbie Tolan did not reach for his waistband area.  *See* Ex. 3, Robbie Tolan Trial Tr. vol. 2, 152:8–11, ***contra***, Ex. 1, Cotton Dep. 67:3–5; Ex. 2, Cotton Trial Tr. vol. 3, 127:13–17, 173:1–3; Ex. 12, Rodriguez Report ¶¶ 61, 65, 67, 71, 75.

24.     Robbie Tolan did not charge Cotton.  *See* Ex. 3, Robbie Tolan Trial Tr. vol. 2, 152:12–13, ***contra***, Ex. 1, Edwards Dep. 53:18–56:10; Ex. 12, Rodriguez Report ¶¶ 65, 67.

25.     Robbie Tolan did not have anything in his hands.  Ex. 13, Decl. of Robbie Tolan ¶ 2.

26.     Nevertheless, Cotton, approximately 32 seconds after arriving on the scene, unholstered his gun and intentionally fired his weapon at Robbie Tolan three times, striking him once in the chest.  Ex. 1, Cotton Dep. 8:11–15, 92:18–93:12.  Cotton's bullet entered Robbie Tolan's body just under his right nipple.  From there, it traveled downward, piercing and collapsing his right lung and finally boring into (and nearly liquefying) his liver.  Ex. 13, Decl. of Robbie Tolan ¶ 3.  The trajectory of the bullet demonstrates that Cotton was standing above Robbie Tolan and fired his gun downward at Robbie Tolan.  *See id.*

27.     After Robbie Tolan fell to the ground, Cotton searched him for weapons.  Ex. 1, Cotton Dep. 89:19–90:8.  Finding none, and knowing that he would be required to justify his use of deadly force against an unarmed man, Cotton asked Robbie what he had been reaching for.  Ex. 2, Cotton Trial Tr. vol. 3, 133:7–12; Ex. 3, Robbie Tolan Trial Tr. vol. 2, 152:4–7; Ex. 4, Edwards Trial Tr. vol. 1, 128:3–8.  *See* Ex. 12, Rodriguez Dep. 69:1–5 (police know through their training that they need to justify a wrongful shooting); Ex. 1, Cotton Dep. 83:12–16 (admitting that it is uncommon for an unarmed suspect who is being held at gunpoint by the police to gesture towards his waistband to reach for a weapon that is not there).

28.     Following the shooting, Bobby Tolan and Marian Tolan were placed in separate police cars for nearly thirty minutes and were not allowed to check on their son.  Ex. 8, Bobby Tolan Trial Tr. 73:11–74:21; Ex. 9, Marian Tolan Trial Tr. 107:4–109:19.  Anthony Cooper was handcuffed and placed in the back of a police vehicle for approximately one hour before he was released.  Ex. 7, Anthony Cooper Dep. 103:15–104:21.

29.     Meanwhile, the police confirmed that Edwards had incorrectly entered the license plate number and that Robbie Tolan's car was not stolen.  Ex. 5, Edwards Dep. 62:4–65:8.

30.     An EMT who arrived at the scene asked Robbie Tolan—who never lost consciousness—what had happened.  Cotton, who was standing nearby, told the EMT, "Do not worry about what happened to him."  Ex. 13, Decl. of Robbie Tolan ¶ 4.

31.     As Robbie Tolan was being wheeled into an ambulance, he overheard Cotton telling the officers at the scene that "we have to get our stories straight."  *See* Ex. 13, Decl. of Robbie Tolan ¶ 5; ***contra***, Ex. 1, Cotton Dep. 95:19–24; Ex. 5, Edwards Dep. 70:14–17.

32.     Robbie Tolan was taken to the Acute Trauma Unit at Ben Taub Hospital where he underwent emergency surgery to save his life.  Ex. 13, Decl. of Robbie Tolan ¶ 6–7; *see* Ex. 14, Photographs of Robbie Tolan.  Although the doctors were able to save his life, they were unable to remove the bullet from Robbie Tolan's body.  Ex. 13, Decl. of Robbie Tolan ¶ 6.

33.     The Bellaire Police Department's history, pattern, custom, and practice of racial profiling, false arrests and detention, and racial harassment are well-documented.  Ex. 15, Affidavits Regarding Racial Profiling and Discrimination.

## APPLICABLE SUMMARY JUDGMENT STANDARDS

34.     Summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[4]   When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, a court must determine (1) whether the plaintiff alleged a violation of a clearly established constitutional right, and (2) whether the defendant's conduct was objectively unreasonable under clearly established law existing at the time of the incident.[5]   "Of course, on *summary judgment*, the objective reasonableness inquiry is a question of law; in other words, this question of law *cannot* be decided if there are *genuine issues of material fact*."[6]

35.     In other words, "[t]o negate a defense of qualified immunity, the plaintiff need not present 'absolute proof' . . . ."[7]   Rather, when the facts, "as interpreted in the light most favorable to the plaintiff indicate a violation of clearly established federal law, and the **discovery indicates material facts are in dispute**, then summary judgment is not possible.   At this point, the 'immunity from suit' is properly lost and the case **must go to trial**."[8]

---

[4] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).
[5] *Siegert v. Gilley*, 500 U.S. 226, 232–34, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Bazan* ex rel. *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001); *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).
[6] *Bazan*, 246 F.3d at 490 (emphasis in original)
[7] *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009).
[8] Martin A. Schwartz and Kathryn R. Urbonya, *Section 1983 Litigation*, FED. JUD. CTR., at 154 (2d ed. 2008) (emphasis added).

36.     A fact is material if it might affect the outcome of the suit.[9]  A dispute regarding a material fact is genuine when the dispute concerns an issue that a reasonable jury could resolve in favor of either party.[10]

37.     Further, when considering the evidence, courts must resolve all doubts in favor of the non-moving party and must draw all reasonable inference in favor of the non-moving party.[11] Courts should not, however, "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."[12]

## ARGUMENT AND AUTHORITIES

38.     Qualified immunity generally protects government officials from civil liability "*if their actions were objectively reasonable* in the light of then clearly established law."[13]  To overcome a defendant's claim of qualified immunity, the plaintiff must show that (1) the defendant violated a constitution right, (2) the constitutional right was clearly established at the time of the alleged misconduct, and (3) the defendant's conduct was objectively unreasonable.[14]

---

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001); *Bazan*, 246 F.3d at 489.

[10] *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

[11] *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001).  Defendants argue that "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the non-moving party *only if* there is a genuine dispute as to those facts."  Defs.' Mot. Summ. J. ¶ 27 (emphasis added).  Although legally correct, Defendants erroneously conclude that the material facts set forth in their Summary of Evidentiary Record are unchallenged and that any factual controversies that exist concern only immaterial facts.  *See id.* at ¶¶ 17, 73.  Because material facts are in dispute, however, the Court must view such facts in the light most favorable to Plaintiffs.

[12] *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).

[13] *Bazan*, 246 F.3d at 488 (emphasis in original) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

[14] *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009)

A defendant will not be immune from liability if it is objectively obvious that no reasonably competent officer would have concluded that the defendant's conduct was lawful.[15]   At the summary judgment stage, however, if genuine issues of material fact exist with respect to whether an officer is entitled to qualified immunity—as is the case here—summary judgment is inappropriate and the case must proceed to trial.[16]

I.  **SERGEANT COTTON IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY.**

39.  As explained in more detail below, genuine issues of material fact preclude summary judgment on Cotton's affirmative defense of qualified immunity because, in light of these material fact issues, a rational jury could determine that Cotton violated Plaintiffs' clearly established constitutional rights in an objectively unreasonable manner.  Defendants' motion for summary judgment as to Plaintiffs' claims against Cotton must be denied.

A.  **Summary Judgment Must be Denied Because there are Genuine Issues of Material Fact Concerning Whether Sergeant Cotton's Use of Deadly Force Violated Robbie Tolan's Clearly Established Constitutional Rights in an Objectively Unreasonable Manner.**

40.  Robbie Tolan has alleged that Cotton used excessive force in violation of the Fourth Amendment.  *See* Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23, 150:14–17, 152:8–13; Ex. 6, Robbie Tolan Dep. 100:18–101:2.  As explained in more detail below, Robbie Tolan's constitutional rights were clearly established at the time Cotton shot and attempted to kill Robbie Tolan.  Contrary to the Defendants' disingenuous assertions that the relevant and material facts are undisputed, however, the facts surrounding Cotton's use of deadly force are genuinely disputed by the parties.  Summary judgment on Cotton's defense of qualified immunity is

---

[15] *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).
[16] *Harper v. Harris County, Tex.*, 21 F.3d 597, 602 (5th Cir. 1994).

therefore inappropriate and Defendants' motion for summary judgment as to Robbie Tolan's claims against Cotton must be denied.

### 1.   *Robbie Tolan Has Alleged Violations of His Constitutional Rights.*

41.   The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[17]  The evidentiary record demonstrates that Cotton used excessive force in violation of Robbie Tolan's Fourth Amendment rights when, without justification, he intentionally shot and attempted to kill Robbie Tolan.  *See* Ex. 9, Marian Tolan Trial Tr. vol. 2, 105:5–16, 128:17–18; Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23, 150:14–17, 152:8–13; Ex. 6, Robbie Tolan Dep. 100:18–101:2; Ex. 4, Edwards Trial Tr. vol. 1, 64:16–65:11; Ex. 7, Anthony Cooper Dep. 77:17–78:25.

### 2.   *Robbie Tolan's Constitutional Rights Were Clearly Established at the Time of Deprivation.*[18]

42.   "It is well settled that if a law enforcement officer uses excessive force in the course of [a seizure], the Fourth Amendment guarantee against unreasonable search and seizure is implicated."[19]  An individual may recover for a constitutional claim of excessive force by

---

[17] U.S. CONST. Amend. IV.

[18] Defendants' argument that Plaintiffs are precluded from arguing that Defendants violated a clearly established constitutional right in light of their discovery responses is without merit.  *See* Defs.' Mot. Summ. J. ¶¶ 105–107.  Plaintiffs objected to Defendants' interrogatories as being overly broad, vague, ambiguous, and overly burdensome because the terms "generally accepted law enforcement officer standards" and "clearly unlawful" were not defined;  because they required Plaintiffs to speculate regarding the knowledge of third parties; and because Plaintiffs are not required to conduct overly burdensome independent research for the sole purpose of answering an interrogatory.  *See* Defs.' Mot. Summ. J. Exs. 21–24.  Defendants have not moved to compel Plaintiffs to respond and Plaintiffs expressly reserved their right to supplement their responses, if necessary.  Regardless, Defendants' expert confirms that Cotton and Edwards received extensive training regarding civil rights and the appropriate use of force, which put them on notice that their conduct was unreasonable at the time.  *See* Ex. 12, Rodriguez Report ¶¶ 30, 42, 66.

[19] *Graham v. Connor*, 490 U.S. 386, 388–95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Harper*, 21 F.3d 597 at 600.  Although claims of unreasonable force under the Fourth Amendment

showing that he suffered (1) an injury,[20] (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of the force was objectively unreasonable.[21]

43.     As part of their licensing requirements, Defendants received comprehensive training and education on topics of civil rights and the laws of the United States, including the laws governing the appropriate use of force.  Ex. 12, Rodriguez Report ¶¶ 30, 42, 66.  Cotton was therefore aware of Robbie Tolan's clearly established constitutional rights on December 31, 2008.  *See id.*

### 3.     *Genuine Issues of Material Fact Exist as to Whether Sergeant Cotton's Use of Deadly Force was Objectively Reasonable.*

44.     In order to justify their Motion for Summary Judgment, Defendants represent to this Court that the underlying material factual issues surrounding the intentional shooting of Robbie Tolan are undisputed.  As explained below, however, not only are the material fact issues heavily disputed by the parties, one of the Defendants has expressly acknowledged the factual disputes and has even contradicted his own former testimony regarding a material fact issue. Defendants' deceptive characterization of the underlying facts notwithstanding, genuine issues of material fact preclude summary judgment and Defendants' Motion for Summary Judgment as to Robbie Tolan's claims against Cotton must therefore be denied.

45.     At the summary judgment stage, an officer is not entitled to qualified immunity in connection with allegations regarding his use of deadly force unless, under the plaintiff's version

---

require a showing that the individual was seized, Defendants do not dispute that Robbie Tolan was seized.

[20] Defendants do not dispute that Robbie Tolan was injured by Cotton's use of deadly force.

[21] *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996).

of events, his use of deadly force was not clearly excessive or clearly unreasonable.[22]  "Unlike some areas of constitutional law, the question of when deadly force is appropriate—and the concomitant conclusion that deadly force is or is not excessive—is well-established."[23]  The use of deadly force is not justified unless a suspect poses a risk of serious harm at that point in time.[24]  The focus of the inquiry is "the act that led [the officer] to discharge his weapon."[25]  If there are genuine issues of material fact regarding the objective reasonableness of the officer's use of excessive force, summary judgment cannot be entered on the issue of qualified immunity.[26]

46.    In support of their Motion for Summary Judgment, Defendants contend that, "[w]hile it is true that, in some ways, Robbie Tolan and Sergeant Cotton view the **undisputed** factual information differently, from their individual subjective perspectives, but their differing opinions regarding the meaning or significance of the **undisputed** facts do not control the analysis the Court must undertake to resolve this motion for summary judgment."  Defs.' Mot. Summ. J. ¶ 73 (emphasis added).

47.    Defendants' assertion that the facts surrounding Cotton's intentional shooting of Robbie Tolan are "undisputed" is patently false.  While Defendants contend that Robbie Tolan jumped up and reached for his waistband area as he charged towards Cotton—thus justifying Cotton's use of deadly force—Plaintiffs contend that Robbie Tolan got up on his knees, made no threatening movements toward his waistband, and did not charge towards Cotton.  ***See*** Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23 (Robbie Tolan pushed himself up to his knees),

---

[22] *Reyes v. Bridgewater*, 362 Fed. App'x 403, 406 (5th Cir. 2010).

[23] *Id.*

[24] *Tennessee v. Garner*, 471 U.S. 1, 11–12, 21, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

[25] *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009).

[26] *Harper*, 21 F.3d 597 at 602.

15

150:14–17 (same), 152:8–11 (Robbie Tolan did not reach for his waistband), 152:12–13 (Robbie

Tolan did not charge Cotton); Ex. 6, Robbie Tolan Dep. 100:18–101:2 (Robbie Tolan pulled his

hands to his chest and pushed himself up), 146:5–20 (Robbie Tolan was shot before he could

stand up); Ex. 16, Lewinski Dep. 12:10–15 (admitting that Robbie Tolan testified that he did not

move his hands to his waistband); *contra* Ex. 2, Cotton Dep. 65:2–5 (Robbie Tolan got up with

"his feet under him"), 67:3–5 (Robbie Tolan appeared to be "drawing a weapon from his

waistband"), 67:25–68:3 (Robbie Tolan stood up on two feet); Ex. 3, Cotton Trial Tr. vol. 3,

127:13–17 (Robbie Tolan was "digging" in his waistband), 173:1–3 (same); Ex. 5, Edwards Dep.

53:18–56:10 (Robbie Tolan was in a hunched, charging position); Ex. 12, Rodriguez Report ¶¶

61 (Robbie Tolan "undertook a fast movement of his hand from his waist band area"), 65

(Cotton observed Robbie Tolan "commence to charge" while "making a movement with his right

hand toward his waistband"), 67 (same), 71 (Robbie Tolan reached for his waistband), 75

(same).

48.    In light of these well-documented factual disputes, it is unclear what Defendants

rely upon in support of their conclusion that the factual record is undisputed.  Further, it is

beyond question that these factual disputes surrounding the events leading up to Cotton's use of

deadly force are material to the issue of whether Cotton's violation of Robbie Tolan's clearly

established constitutional rights was objectively reasonable.  *Bazan*, 246 F.3d at 492

("[D]eciding what occurred when deadly force was employed obviously will control whether the

[defendant's] conduct was objectively reasonable; therefore, those facts are material."); *Manis*,

585 F.3d at 845 (the focus of the inquiry is the act the led the officer to discharge his weapon).

*See Bazan*, 246 F.3d at 493 (noting that contrasting characterizations of the events at issue can

affect the outcome of the case and are therefore material).

49.     Notably, Cotton himself agrees that the facts surrounding the shooting are in dispute as well as material.  Ex. 1, Cotton Dep. 72:6–24 (admitting disagreement as to whether Robbie Tolan reached for his waistband before Cotton shot him), 73:3–7 (admitting disagreement as to whether Robbie Tolan stood up or brought himself up on one knee before Cotton shot him), 81:15–20 (admitting that Robbie Tolan standing up and reaching for his waistband were very important factors in his decision to shoot Robbie Tolan).

50.     In addition to acknowledging the genuine factual disputes at issue in this case, Cotton has also created a factual dispute by contradicting the testimony he gave at his criminal trial.  At trial, Cotton testified that he shot Robbie Tolan, in part, because he was "digging" in his waistband.  Ex. 2, Cotton Trial Tr. vol. 3, 127:13–17.  During his deposition, however, Cotton changed his testimony, explaining: "I don't mean that to mean, though, that he was reaching down inside of his pants necessarily.  That's not -- that wouldn't be accurately what I saw."  Ex. 1, Cotton Dep. 66:24–67:2.  Cotton's current version of the events leading up to his use of deadly force is simply that Robbie Tolan's right arm was "at his waistband" near the center of his body.  *Id.* at 65:6–15.  As such, Cotton currently disputes Plaintiffs' version of the events at issue as well as his own.

51.     In further support of their Motion for Summary Judgment, Defendants suggest that "there is nothing within Robbie Tolan's testimony which indicates that Sergeant Cotton's reported perception of the undisputed [sic] factual information was unreasonable, or that Sergeant Cotton's response to the undisputed [sic] factual information was unreasonable."[27]

---

[27] Defendants rely heavily on their assertion that police officers are trained not to believe what suspects tell them in potentially dangerous situations.  Defendants Edwards and Cotton, however, were not confronted with a single suspect who disputed the Defendants' allegations.  Rather, not one—but **four**—individuals clearly and repeatedly told the Defendants that Robbie Tolan's car was not stolen.  Defendants' refusal to take any of the Plaintiffs' information into

Defs.' Mot. Summ. J. ¶ 77.  Defendants somehow completely overlook the fact, however, that Robbie Tolan has expressly testified on more than one occasion that he did not make the threatening gestures Cotton relies upon to justify his use of deadly force.  Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23, 150:14–17, 152:8–13; Ex. 6, Robbie Tolan Dep. 100:18–101:2, 146:5–20.  This material factual dispute precludes summary judgment on Cotton's defense of qualified immunity.  *See Harper*, 21 F.3d at 602 ("While it is correct that the reasonableness of the arresting officer's conduct under the circumstances is a question of law for the court to decide, such is not the case where there exist material factual disputes . . . **Plaintiff [] has specifically denied that she attempted to evade arrest or detention.  The facts supporting the warrantless arrest are in serious dispute and turn on a credibility determination that can only be made by the jury.**") (internal citations omitted) (emphasis added).

52.     It is also worth noting that, in support of their argument that Cotton's use of deadly force was objectively reasonable, Defendants rely heavily on the report of their expert, Commander Albert Rodriguez.  *See* Defs.' Mot. Summ. J. ¶¶ 74–86, 93.  In his report, Rodriguez concludes that a reasonable officer in Cotton's situation would have believed the use of deadly force was justified.  Ex. 12, Rodriguez Report ¶¶ 77–79.  When asked how he reached this conclusion in light of the dispute as to whether Robbie Tolan reached for his waistband or made any other threatening gestures, Rodriguez testified that Robbie Tolan's own deposition testimony confirmed that he moved his arms toward his mid body, i.e., waistband, area when he pushed himself off the ground.  Ex. 17, Rodriguez Dep. 26:25–27:12, 80:19–91:18.  When pressed regarding the details of Robbie Tolan's alleged testimony, however, Rodriguez was unable to point to any such statements made by Robbie Tolan during his deposition.  *Id.* at 56:8–66:7.

---

consideration—especially before using deadly force—clearly weighs on the reasonableness of Defendants' conduct.

53.     The transcript of Robbie Tolan's deposition testimony reveals that Rodriguez's conclusions regarding the objective reasonableness of Cotton's conduct are undeniably flawed. Robbie Tolan did not testify that he pulled his hands to his waistband—as Rodriguez erroneously testified and concluded in his report—but instead testified that he pulled his hands **to his chest** to push himself up on his knees:

> Q.      So to get up you have got to pull your arms back towards kind of **your chest area** and push up, right?
>
> A.      Yes.
>
> Q.      And would it be right for me to say you used kind of like a push up maneuver to get yourself up?
>
> A.      Yes, sir.
>
> Q.      Drew your hands back from where they were **about mid body** and then pushed up, right?
>
> A.      Sure.

Ex. 6, Robbie Tolan Dep. 100:18–101:2 (emphasis added).   Construing Robbie Tolan's testimony, which associates "mid body" with "chest area," as an admission that he moved his hands toward his waistband is, at the very least, far-fetched.   Because Rodriguez's conclusions regarding the objective reasonableness of Cotton's use of deadly force rely heavily on his unsubstantiated assumption that Robbie Tolan reached for his waistband, Rodriguez's opinions are unreliable.[28]   *See, e.g.,* Ex. 12, Rodriguez Report ¶¶ 61, 65, 67.

---

[28] Although the Court does not assess credibility at the summary judgment stage, it is worth noting that Judge Hoyt has already assessed Rodriguez's credibility as an expert: "It is like the cuttlefish squirting out ink in an effort to escape.  Rodriguez's testimony is just another stream of endless irrepressible repetition of half truths."  Ex. 18, Order on Motion for Sanctions, *Ibarra v. Harris County, Tex.*, No. H-04-00186, at 14 n.10 (March 2, 2005).  *See* Ex. 17, Rodriguez Dep. 42:10–56:7.

54.     Defendants' assertion that the underlying facts are not in dispute is not only completely unsupported by the evidentiary record, it is conclusively contradicted by the evidentiary record—and, more specifically, by Cotton.   Because there are genuine issues of material fact regarding the objective reasonableness of Cotton's conduct, the Court is precluded from granting summary judgment on Cotton's defense of qualified immunity as to Robbie Tolan's cause of action for excessive force.

**B.     Summary Judgment Must Be Denied Because there are Genuine Issues of Material Fact Concerning Whether Sergeant Cotton's Use of Excessive Force Violated Marian Tolan's Clearly Established Constitutional Rights in an Objectively Unreasonable Manner.**

55.     As explained below, Marian Tolan has alleged that Cotton used excessive force in violation of her Fourth Amendment rights.  *See* Ex. 9, Marian Tolan Trial Tr. vol. 2, 101:1–102:6.  Marian Tolan's constitutional rights guaranteed by the Fourth Amendment were clearly established at the time Cotton unjustifiably grabbed her and threw her against her garage door with such force that she suffered bruises.  The evidentiary record establishes, however, that the facts surrounding Cotton's use of excessive force are genuinely disputed.  Summary judgment on Cotton's affirmative defense of qualified immunity is therefore inappropriate as to Marian Tolan's cause of action for excessive force.

### *1.     Marian Tolan Has Alleged Violations of her Constitutional Rights.*

56.     The Fourth Amendment prohibits the excessive use of force during an investigative detention or seizure.  The evidentiary record establishes that Cotton used excessive force in violation of Marian Tolan's Fourth Amendment rights when, without justification, he grabbed Marian Tolan by her arm and threw her against her garage door.  *See* Ex. 1, Cotton Dep. 57:1–59:14; Ex. 9, Marian Tolan Trial Tr. vol. 2, 101:1–102:6; Ex. 10, Photographs of Marian Tolan; Ex. 11, Decl. of Chasen Goudeau.

### 2. Marian Tolan's Constitutional Rights were Clearly Established at the Time of Deprivation.

57.     As noted above, on December 31, 2008, (1) Marian Tolan's constitutional rights were clearly established, and (2) Cotton was well aware of Marian Tolan's clearly established constitutional rights.  Ex. 12, Rodriguez Report ¶¶ 30, 42, 66.

### 3. Genuine Issues of Material Fact Exist as to Whether Sergeant Cotton's Use of Excessive Force was Objectively Reasonable.

58.     Defendants conclude that there are no genuine issues of material fact regarding the objective reasonableness of Cotton's use of force against Marian Tolan.   Once again, however, Defendants overlook the fact that Plaintiffs dispute Defendants' characterization of the events leading up to Cotton's decision to forcefully grab Marian Tolan by the arm and throw her against her garage.   Because Marian Tolan has denied that she interfered with Defendants' investigation—and therefore disputes Cotton's alleged justification for using such force— Defendant's Motion for Summary Judgment as to Marian Tolan's claim against Cotton for excessive force must be denied.

59.     As previously noted, an individual may recover for a constitutional claim of excessive force by showing that she suffered (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of the force was objectively unreasonable.[29]   If there are genuine issues of material fact regarding the objective reasonableness of an officer's use of excessive force, summary judgment cannot be entered on the issue of qualified immunity.[30]

60.     In support of their motion for summary judgment, Defendants assert that "a police officer cannot be subjected to liability merely because he uses force while carrying out his duties

---

[29] *Ikerd*, 101 F.3d at 433–34.
[30] *Harper*, 21 F.3d 597 at 602.

and an officer cannot be held responsible for unfortunate results of *necessary force*."  Defs.' Mot. Summ. J. ¶ 62 (emphasis in original).  Although the parties do not dispute that Cotton used force, the parties do dispute the necessity of such force.  Cotton testified that he grabbed Marian Tolan because she was not complying with his request to get against the garage and that he shoved Marian Tolan against the garage to push her out of the way because of Robbie Tolan's threatening statements and movements.  *Id.* at ¶¶ 19–22; Ex. 1, Cotton Dep. 60:7–62:12.

61.     Plaintiffs—and Edwards—have testified, however, that Robbie Tolan yelled at Cotton *after* Cotton threw Marian Tolan against the garage.  Ex. 3, Robbie Tolan Trial Tr. vol. 2, 149:20–23; Ex. 4, Edwards Trial Tr. vol. 1, 64:16–65:11 (Cotton pushed Marian Tolan against the garage, then Robbie Tolan yelled, then Cotton shot Robbie Tolan); Ex. 9, Marian Tolan Trial Tr. vol. 2, 102:1–104:6.  As such, Plaintiffs—and Edwards—dispute that Cotton threw Marian Tolan against the garage in order to move her out of his way so that he could shoot Robbie Tolan.

62.     Marian Tolan has also testified that Cotton grabbed her and threw her against the garage in response to her protests that he was making a mistake, and that he did so with such force that he left bruises on her arm and on her back.  *See* Ex. 9, Marian Tolan Trial Tr. vol. 2, 102:1–104:6; Ex. 10, Photographs of Marian Tolan; Ex. 11, Decl. of Chasen Goudeau; *contra*, Ex. 1, Cotton Dep. 58:25–59:8 (denying that he caused the bruises on Marian Tolan's arms).  As such, Marian Tolan disputes that Cotton used force against her because she was refusing to comply with his requests or otherwise interfering with his investigation.

63.     Whether Cotton grabbed and then shoved Marian Tolan against the garage simply because she was trying to explain to him that he was making a mistake or whether he shoved her against the garage because he was attempting to push her out of the way in order to respond to a

perceived threat is material to whether Cotton's use of force was clearly excessive and objectively reasonable.[31]  Because these material facts are genuinely in dispute, the Court cannot resolve the issue of Cotton's qualified immunity as a matter of law.  Defendants' motion for summary judgment as to Marian Tolan's cause of action against Cotton for excessive force must therefore be denied.

> C.   **Summary Judgment Must be Denied Because there are Genuine Issues of Material Fact Concerning Whether Sergeant Cotton Violated Plaintiffs' Rights to Equal Protection of the Law.**

64.   Defendants suggest that Plaintiffs have offered no evidence to support their allegations that Cotton denied them equal protection of the law.  Rather than simply alleging that Cotton violated the Fourteenth Amendment rights, however, Plaintiffs have produced evidence of a pattern of unconstitutional racial profiling and discrimination by The Bellaire Police Department.  Because a rational jury could conclude, based on this evidence, that Cotton treated the Tolans and Anthony Cooper differently based on their race, Defendants' Motion for Summary Judgment as to Plaintiffs' equal protection claims against Cotton must be denied.

65.   The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."[32]  In other words, the Fourteenth Amendment requires similarly situated persons to be treated alike.[33]  To state an equal protection violation, a plaintiff must allege that a state actor

---

[31] *See Bazan*, 246 F.3d at 492–93.
[32] U.S. CONST. Amend. XIV § 1.
[33] *See, e.g., Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982).

intentionally discriminated against the plaintiff because of membership in a protected class.[34] With respect to motions for summary judgment based on the affirmative defense of qualified immunity, "[w]hen an official's intent or the reasons for his or her actions are an essential element of the underlying violation . . . factual disputes over intent [are treated] just like any other factual dispute that can justify a denial of qualified immunity."[35] Therefore, if there are genuine issues of material fact concerning an officer's intent to discriminate or an officer's discriminatory conduct, summary judgment must be denied.

66.     Plaintiffs have alleged that Cotton denied them equal protection of the law by responding to the incident on December 31, 2008 differently than he would normally respond to such an incident because of their race.  Plaintiffs' equal protection rights were clearly established at the time and Cotton was well-aware of their constitutional right to equal protection.  Ex. 12, Rodriguez Report ¶¶ 30, 42, 66.

67.     Contrary to Defendants' assertions, Plaintiffs have done more than simply allege personal beliefs that Cotton discriminated against them.   Rather, in addition to alleging discrimination, Plaintiffs have provided evidence of The Bellaire Police Department's unconstitutional discrimination and racially motivated practices.  Ex. 15, Affidavits Regarding

---

[34] *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).

[35] *Senu-Oke v. Jackson State Univ.*, 521 F. Supp. 2d 551, 559–60 (S.D. Miss. 2007) *aff'd*, 283 F. App'x 236 (5th Cir. 2008) (citing *Tompkins v. Vickers*, 26 F.3d 603, 607–10 (5th Cir.1994) (holding that the existence of a retaliatory motive was a factual issue that precluded summary judgment on qualified immunity in a First Amendment case in which a teacher claimed that he had been transferred in retaliation for criticizing the school superintendent); *see also Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 535, n.6 (5th Cir.1997) (stating that the court lacks jurisdiction on interlocutory appeal to review whether there is a genuine issue of fact as to intentional discrimination)).  *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166–71 (10th Cir. 2003) (genuine fact issue regarding arresting officer's racial motivation precluded summary judgment).

Racial Profiling and Discrimination.  *See* Ex. 13, Decl. of Robbie Tolan ¶ 5 (after the shooting, Cotton told the officers at the scene that "we need to get our stories straight").

68.     In light of this evidence, and because there are unresolved issues of material fact concerning Cotton's conduct, a rational jury could conclude that Cotton's swift and violent response to the non-threatening scene in front of the Tolans' home on December 31, 2008 is another example of The Bellaire Police Department's racially-motivated and discriminatory policies and tactics.  Further, a rational jury could also conclude that Cotton assaulted Marian Tolan and used deadly force against Robbie Tolan because they are African-American. Summary judgment as to Plaintiffs' equal protection claims against Cotton must therefore be denied.

## II.    OFFICER EDWARDS IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY.

69.     Plaintiffs have alleged that Edwards violated their constitutional rights guaranteed by the Fourth and Fourteenth Amendments.  As explained in more detail below, Plaintiffs' constitutional rights were clearly established at the time Edwards unreasonably detained and/or seized them in their front yard.

70.     Contrary to Defendants' assertions that the underlying facts are undisputed, the material facts surrounding Edwards' detention and/or seizure of Plaintiffs are genuinely disputed by the parties.  In light of these genuine issues of material fact, a rational jury could determine that Edwards violated Plaintiffs' clearly established constitutional rights in an objectively unreasonable manner.  Defendants' motion for summary judgment as to Plaintiffs' claims against Edwards must be denied.

**A.     Plaintiffs Have Alleged Violations of their Constitutional Rights.**

71.     The evidentiary record demonstrates that Edwards violated Plaintiffs' constitutional rights guaranteed by the Fourth and Fourteenth Amendments.  More specifically, Edwards' unjustified, racially-motivated detention and/or seizure of Plaintiffs violated their Fourth Amendment rights to be free from unreasonable searches and seizures.  Further, because Edwards engaged in racial profiling and treated Plaintiffs differently throughout the incident because of their race, Edwards denied Plaintiffs equal protection of the law in violation of the Fourteenth Amendment.

**B.     Plaintiffs' Constitutional Rights were Clearly Established at the Time of Deprivation.**

72.     As previously discussed, on December 31, 2008, (1) Plaintiffs' constitutional rights were clearly established, and (2) Edwards was well aware of Plaintiffs' clearly established constitutional rights.  *See* Ex. 12, Rodriguez Report ¶¶ 30, 42, 66.

**C.     Genuine Issues of Material Fact Exist as to Whether Officer Edwards' Conduct was Objectively Reasonable.**

73.     Although Defendants contend that the evidentiary record conclusively establishes that Edwards is entitled to qualified immunity, Defendants fail to acknowledge the existence of material fact disputes concerning the objective reasonableness of Edwards' conduct.  Based on these material fact disputes and the evidentiary record, a rational jury could find that Edwards acted objectively unreasonable.  As such, Edwards is not entitled to summary judgment on his affirmative defense of qualified immunity.

74.     The Fourth Amendment prohibits investigative detentions that are not based on reasonable suspicion of criminal activity as well as seizures that are not based on probable

cause.[36]   The Fourth Amendment also prohibits the use of excessive force during an investigatory detention or a seizure.[37]   The Equal Protection Clause of the Fourteenth Amendment, on the other hand, prohibits officers from treating individuals differently because of their race.[38]

75.     If there are genuine issues of material fact regarding the objective reasonableness of the officer's conduct under the Fourth Amendment, summary judgment cannot be entered on the issue of qualified immunity.[39]   Likewise, if there are genuine issues of material fact concerning an officer's intent to discriminate or an officer's discriminatory conduct for purposes of establishing a violation of the Fourteenth Amendment, summary judgment must be denied.[40]

76.     Defendants contend that the undisputed facts show that Edwards was justified in temporarily detaining Robbie Tolan and Anthony Cooper—and then Bobby Tolan and Marian Tolan—to investigate the stolen vehicle report.  Defs.' Mot. Summ. J. ¶ 48–52.  Although the fact that Robbie Tolan's car was not actually stolen is irrelevant to this analysis, there are genuine issues of material fact concerning the reasonableness of Edwards' conduct.

77.     As Defendants' expert confirms, it would never be reasonable for Edwards to take Robbie Tolan's and/or Anthony Cooper's race into consideration in determining whether he should stop them.  Ex. 17, Rodriguez Dep. 124:18–125:15.  Nevertheless, The Bellaire Police Department engages in racial profiling and other discriminatory tactics.  Ex. 15, Affidavits Regarding Racial Profiling and Discrimination.  Furthermore, Edwards' contention that he

---

[36] *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).
[37] *Graham*, 490 U.S. at 388–95; *Harper*, 21 F.3d 597 at 600.
[38] U.S. CONST. Amend. XIV; *Plyler*, 457 U.S. at 216.
[39] *Harper*, 21 F.3d 597 at 602.
[40] *Senu-Oke*, 521 F. Supp. 2d at 559–60 (citing *Tompkins*, 26 F.3d at 607–10; *Coleman*, 113 F.3d at 535, n.6).  *See Marshall*, 345 F.3d at 1166–71.

followed Robbie Tolan's car because of the way in which he executed an "abrupt" turn is completely unsubstantiated—as is his contention that he did not know Robbie Tolan's or Anthony Cooper's race at the time he began following Robbie Tolan's car.[41]  *See* Ex. 5, Edwards Dep. 23:6–22, 75:13–18.  If, as Plaintiffs have alleged, Edwards targeted Robbie Tolan and Anthony Cooper and treated them differently because of their race—in accordance with The Bellaire Police Department's history and practice of racial profiling and discrimination— Edwards' detention and/or seizure of Plaintiffs at gunpoint was not supported by reasonable suspicion or probable cause and was therefore objectively unreasonable.  Summary judgment is therefore inappropriate.[42]

78.    With respect to their equal protection claims, Plaintiffs have done more than simply allege personal beliefs that Edwards discriminated against them.  As noted above, Plaintiffs have provided evidence of The Bellaire Police Department's history of racial profiling and discrimination.  *See* Ex. 15, Affidavits Regarding Racial Profiling and Discrimination. Further, in the immediate aftermath of the shooting, Defendants were overheard discussing how they needed to get their "stories straight."  Ex. 13, Decl. of Robbie Tolan ¶ 5.

79.    In light of the material facts that are genuinely in dispute concerning Edwards' conduct, a rational jury could conclude that Edwards' unreasonable detention and/or seizure of

---

[41] As previously noted, despite the fact that he followed Robbie Tolan's car and then confronting Robbie Tolan and Anthony Cooper in the Tolans' front yard, Edwards testified that he did know either Robbie Tolan's or Anthony Cooper's race until after Robbie Tolan was shot.  Ex. 5, Edwards Dep. 24:24–25:16.  Robbie Tolan testified, however, that he was fully illuminated by Edwards' headlights as he stood outside his car as Edwards drove down the street.  Ex. 6, Robbie Tolan Dep. 13:17–15:5.  As such, a rational jury could conclude that, at a minimum, Edwards knew Robbie Tolan's race before he decided to confront him with his gun drawn and without identifying himself as a police officer.

[42] *Senu-Oke*, 521 F. Supp. 2d at 559–60 (citing *Tompkins*, 26 F.3d at 607–10; *Coleman*, 113 F.3d at 535, n.6).  *See Marshall*, 345 F.3d at 1166–71 (genuine fact issue regarding arresting officer's racial motivation precluded summary judgment).

Plaintiffs on December 31, 2008 is yet another example of The Bellaire Police Department's discriminatory policies and tactics and that Edwards forcefully detained and/or seized the Tolans and Anthony Cooper because they are African-American.   In light of the genuine issues of material fact concerning Edwards' conduct, summary judgment as to Plaintiffs' claims against Edwards must be denied.[43]

## CONCLUSION AND PRAYER

80.    Plaintiffs' allegations and the evidentiary record establish the existence of genuine issues of material fact that must be resolved by the trier of fact.   Because these genuine issues of material fact preclude summary judgment in favor of Defendants on their defense of qualified immunity, Plaintiffs request that the Court deny Defendants' motion for summary judgment.

Respectfully Submitted,

/s/ Geoffrey Berg
Geoffrey Berg
Texas Bar No. 00793330
David Berg
Texas Bar No. 02187000
Stephanie A. Gutheinz
Texas Bar No. 24069841
BERG & ANDROPHY
3704 Travis Street
Houston, Texas 77002
Telephone: 713.529.5622
Facsimile: 713.529.3785

George R. Gibson
Texas Bar No. 00793802
Marvin Nathan
Texas Bar No. 14817000
NATHAN SOMMERS JACOBS
2800 Post Oak Boulevard, 61st Floor
Houston, Texas 77056-6102
Telephone: 713.960.0303
Facsimile: 713.892.4840

**ATTORNEYS FOR PLAINTIFFS**

---

[43] *Id.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2011, a true and correct copy of the foregoing was sent electronic delivery, certified mail, hand delivery, and/or facsimile as follows:

William S. Helfand
Norman Giles
Chamberlain, Hrdlicka, White, Williams & Martin
1200 Smith, Suite 1400
Houston, Texas  77002


_____/s/ Geoffrey Berg_____
Geoffrey Berg

30