IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT R. TOLAN, MARIAN TOLAN, BOBBY TOLAN, AND ANTHONY COOPER, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:09-1324 |
| JEFFREY WAYNE COTTON; JOHN C. EDWARDS; RANDALL C. MACK, CHIEF OF POLICE; BYRON HOLLOWAY, ASSISTANT CHIEF OF POLICE; CYNTHIA SIEGEL, MAYOR; BERNARD SATTERWHITE, CITY MANAGER; THE CITY OF BELLAIRE; AND THE BELLAIRE POLICE DEPARTMENT, | § § § § § § § § § § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS EDWARDS' AND COTTON'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.     Genuine Issues of Material Fact .......................................................................................1

II.    The Objective Reasonableness of Defendants' Conduct Cannot be Determined as a Matter of Law ...................................................................................3

III.   Plaintiffs Have Alleged Violations of their Clearly Established Constitutional Rights ........................................................................................................7

CONCLUSION AND PRAYER ........................................................................................10

CERTIFICATE OF SERVICE ..........................................................................................11

# **TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*Harlow v. Fitzgerald*,
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)..................................7, 8

*Saucier v. Katz*,
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)..................................................................................................................9

*Tennessee v. Garner*,
    471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).............................................7

*Wilson v. Layne*,
    526 U.S. 604, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)...................................7

**CIRCUIT COURTS OF APPEAL CASES**

*Bazan* ex rel. *Bazan v. Hidalgo County*,
    246 F.3d 481 (5th Cir. 2001) .............................................................2, 4, 7, 8

*Goodson v. City of Corpus Christi*,
    202 F.3d 730 (5th Cir. 2000) ............................................................................8

*Harper v. Harris County, Tex.*,
    21 F.3d 597 (5th Cir. 1994) ......................................................................4, 5, 7

*Ikerd v. Blair*,
    101 F.3d 430 (5th Cir. 1996) ............................................................................8

*Reyes v. Bridgewater*,
    362 Fed. App'x 403 (5th Cir. 2010) ..............................................................5, 6

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ............................................................................3

*Wyatt v. Hunt Plywood Co.*,
    297 F.3d 405 (5th Cir. 2002) ............................................................................4

Plaintiffs Robert R. Tolan, Marian Tolan, Bobby Tolan, and Anthony Cooper briefly respond to Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment as follows:

## I. GENUINE ISSUES OF MATERIAL FACT

1. The evidentiary record establishes the existence of genuine issues of material fact.[1] Defendants focus in their Reply on whether Robbie Tolan was standing when he was shot.[2] Defendants wish the Court to believe that not only was Robbie Tolan on his feet, he has admitted as much:

> Additionally, while the Plaintiffs' briefing *argues* that the three items Plaintiffs identify are disputed, the actual factual *evidentiary record* actually establishes otherwise. Contrary to the argument of his counsel, Robbie Tolan admits that, after he was shot, "I kind of stood there like this and was on the ground." Therefore, the *factual* record, and indeed Robbie Tolan's own testimony plainly establishes that Robbie Tolan admits he actually rose and stood, not that he remained down on his knees.

Defs.' Reply at ¶ 13 (emphasis in original) (internal citations omitted). Why the Defendants have chosen to make an argument so plainly at odds with the record is unclear. What is clear—what the evidence, not argument and not supposition establish—is that Robbie Tolan was not shot because he was on his feet; he was on his feet because he was shot:

> Q: Who shot you?
> A: Officer Cotton.
> Q: What did he shoot you with?

---

[1] *See, e.g.,* Ex. 3 at 149:20–23, 150:14–17; Ex. 4 at 64:16–65:11; Ex. 6 at 100:18–101:2; Ex. 7 at 77:17–78:25; Ex. 9 at 105:5–16, 128:17–18; *contra*, Ex. 1 at 60:7–62:12, 65:2–5, 67:3–5, 67:25–68:3; Ex. 2 at 127:13–17, 173:1–3; Ex. 4 at 66:1–4, 67:20–22; Ex. 5 at 53:18–56:10; Ex. 12 at ¶¶ 61, 65, 71, 75. *See also* Ex. 3 at 149:20–23; Ex. 6 at 110:9–14, 146:5–20; Ex. 9 at 105:5–16, 128:17–18; *contra*, Ex. 1 at 65:2–5, 67:25–68:3. *See also* Ex. 3 at 152:8–11, *contra*, Ex. 1 at 67:3–5; Ex. 2 at 127:13–17, 173:1–3; Ex. 12 at ¶¶ 61, 65, 67, 71, 75. *See also* Ex. 3 at 152:12–13; *contra*, Ex. 1 at 53:18–56:10; Ex. 12 at ¶¶ 65, 67.

[2] Though he was not standing when he was shot, Plaintiffs certainly dispute Defendants' suggestion that standing is an offense worthy of the imposition of the death penalty.

1

> A: A gun. I don't know. I don't know what it was.
> Q: Was it a firearm?
> A: Yes.
> Q: All right. What did you do, please?
> A: **After I was shot <u>the bullet lifted me to my feet</u> and against the front door**.
> Q: What did you do?
> A: **I kind of - - I was gasping for air. I didn't do anything. I just kind of stood there like this and then I blinked and was on the ground.**

Robbie Tolan Trial Tr. at 96:5–22 (emphasis added) (attached as Ex. 32 to Defs.' Reply).

2. As discussed more fully in Plaintiffs' Response, and as Cotton himself agrees, the evidentiary record establishes that there are genuine disputes concerning the key facts at issue in this case. *See, e.g.,* Pls.' Response at ¶¶ 44–54 (discussing genuine issues of material fact regarding Cotton's use of deadly force against Robbie Tolan), 58–63 (discussing genuine issues of material fact regarding Cotton's use of excessive force against Marian Tolan).

3. One such fact issue was created by Cotton's contradictory testimony. *See id.* at ¶¶ 49 (discussing Cotton's agreement that the facts surrounding the shooting are in dispute as well as material), 50 (discussing how Cotton's trial testimony that Robbie Tolan was "digging" in his waistband contradicted his deposition testimony). Calling such issues immaterial and wishing that they were, as Defendants do, does not make them so. The facts and circumstances leading up to Cotton's use of deadly force are material. *See, e.g., Bazan* ex rel. *Bazan v. Hidalgo County*, 246 F.3d 481, 492 (5th Cir 2001) ("[D]eciding what occurred when deadly force was employed obviously will control whether the [defendant's] conduct was objectively reasonable; therefore, those facts are material."). *See id.* at 493 (noting that contrasting characterizations of the events at issue can affect the outcome of the case and are therefore material).

4.     Defendants also argue that their expert, Commander Albert Rodriguez,[3] confirms the absence of any genuine issues of material fact with respect to the reasonableness of Cotton's use of deadly force, and that Plaintiffs failed to dispute his expert analysis with any summary judgment evidence. *See* Defs.' Reply at ¶ 20, n.4.  As argued in Plaintiffs' Response, however, additional summary judgment evidence was not required to dispute Rodriguez's opinions because his report and his conclusions are fundamentally flawed.  When asked how he could make any determination regarding the reasonableness of Cotton's conduct in light of the underlying evidentiary disputes, Rodriguez stated that Robbie Tolan's own deposition testimony confirmed that he moved his armed toward his mid body, i.e., waistband, area when he pushed himself off the ground.  Ex. 17 at 26:25–27:12, 80:19–91:18.  Robbie Tolan, however, actually testified that he pulled his hands **to his chest**, which Defendants' attorney then quickly associated with "**mid body**," which, of course, has now been associated with "**waistband**."  Ex. 6 at 100:18–101:2 (emphasis added).  *See* Pls.' Response at ¶¶ 52–53.  Notably, nowhere in any report does any expert conclude that Defendants' conduct was objectively reasonable in light of Plaintiffs' version of the facts.

II.  **THE OBJECTIVE REASONABLENESS OF DEFENDANTS' CONDUCT CANNOT BE DETERMINED AS A MATTER OF LAW**

5.     Throughout their Reply, Defendants allege that Plaintiffs failed "to address, let alone sustain, their burden to disprove immunity" and have "failed in their burden to prove that no competent officer could reasonably have believed that Officer Edwards and Sgt. Cotton's conduct was objectively reasonable."  *See, e.g.,* Defs.' Reply at ¶ 43–45.

---

[3] Commander Rodriguez's testimony is unreliable and should be disregarded.  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

6. Defendants invite the Court to apply the wrong standard. The objective reasonableness of an officer's conduct cannot be determined at the summary judgment stage if there are genuine fact issues that are material to the reasonableness of the officer's conduct. *Bazan*, 246 F.3d at 483 ("Because the facts the district court concluded are genuinely disputed *are also material* to the reasonableness of the Trooper's conduct, appellate jurisdiction is lacking.") (emphasis in original). As the Fifth Circuit clearly stated in *Bazan*:

> [O]n summary judgment, the objective reasonableness inquiry is a question of law; in other words, this question of law *cannot* be decided if there are *genuine issues of material fact* . . . [D]eciding what occurred when deadly force was employed obviously will control whether the Trooper's conduct was *objectively reasonable*; therefore, those facts are material.

*Id.* at 490–92 (emphasis in original). *See Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002) ("An issue is material if its resolution could affect the outcome of the action.").

7. In *Harper v. Harris County, Texas*, the Fifth Circuit affirmed the denial of summary judgment on the defendant's affirmative defense of qualified immunity because of the existence of factual disputes concerning the reasonableness of the officer's conduct. 21 F.3d 597, 602 (5th Cir. 1994). Gloria Harper sued officer J.P. Denholm for wrongful arrest and use of excessive force in violation of the Fourth Amendment, alleging that Denholm illegally arrested her, cut off her air by grabbing her throat, told her to drop her infant son, referred to her as a "bitch," and threw hew to the ground. *Id.* at 599. Denholm moved for summary judgment based on qualified immunity, arguing that his use of force was objectively reasonable under the circumstances and that the arrest was lawful because Harper attempted to flee. *Id.* at 600–01. Harper specifically denied that she attempted to evade arrest or detention. *Id.* at 602.

8. In light of this factual discrepancy, the court held that "[t]he facts supporting the warrantless arrest are in serious dispute and turn on a credibility determination that can only be

4

made by a jury." *Id.* The court similarly held that because "the evidence reveals that a genuine issue of material fact remains regarding the use of excessive force **and the objective reasonableness of using such force**, [] Denholm is not entitled to summary judgment." *Id.* at 601 (emphasis added). *See id.* at 602 ("While it is correct that the reasonableness of the arresting officer's conduct under the circumstances is a question of law for the court to decide, such is not the case where there exist material factual disputes as in the case before us.").

9. Recently, in *Reyes v. Bridgewater*, the Fifth Circuit similarly held that fact issues precluded summary judgment in favor of a police officer based on qualified immunity. 362 Fed. App'x 403, 409 (5th Cir. 2010). Officer William Bridgewater, after responding to a reported altercation, shot and killed Jose Ceballos, Jr. during an incident at Ceballos' home. *Id.* at 404. When Bridgewater arrived at the scene, he heard a scream from inside the apartment at kicked open the front door with his gun drawn. *Id.* at 404–05. Ceballos appeared in the entryway holding a kitchen knife in one hand and a cigarette in the other. *Id.* at 405. Bridgewater ordered Ceballos multiple times to get down and to put down the knife on the ground. *Id.* Ceballos did not comply and told the officers to leave. *Id.*

> It is undisputed that Ceballos next threw down his cigarette, that Bridgwater twice said, "Don't do it," and that Bridgewater fired one shot at Ceballos, which struck him in the chest and ultimately killed him. As to the further details of the event, the testimony of [Ceballos' sister and mother] conflicts with that given by the police officers. The import of those conflicts is the central issue presented by this appeal.
>
> Bridgewater testified that, just before the shooting, Ceballos suddenly appeared more aggressive, threw his cigarette butt at the officers, and raised the knife he was holding. [Ceballos' sister and mother], on the other hand, testified that Ceballos flicked his cigarette but nonaggressively, did not step forward toward the officers (instead, that he was swaying side to side, and did not raise the knife). Bridgewater testified that, but for Ceballos' action of stepping forward and raising the knife—actions Ceballos'[] family members say did not occur—he would not have shot Ceballos.

5

*Id.*

10. Although the court acknowledged that a suspect with a knife may not pose the exact threat of a suspect with a gun, the court reversed the district court's grant of summary judgment in favor of Bridgewater, holding:

> The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others. **Here, the facts are unclear; was there such an immediate threat? Bridgewater's version of the facts would say "yes," while the other witnesses' versions would say "no."** The case presented here **is not one where the law is not clearly established** but rather **one where the facts are not clearly established**. As such, summary judgment was improper.

*Id.* at 409 (emphasis added).

11. Just as Bridgewater testified that he would not have shot Ceballos but for Ceballos' action of stepping forward and raising the knife, Cotton testified that he would not have fired his weapon but for Robbie Tolan's alleged action of standing up and reaching for his waistband—actions Plaintiffs claim did not occur:

> Q: Had Robbie continued laying on the ground with his arms outstretched and done nothing other than yelled at you, would you have shot him?
> A: I don't believe I would have, no.
> Q: But he didn't do that?
> A: That's correct.

*See* Defs.' Ex. 2 at 71:3–23. Because Plaintiffs dispute that Robbie Tolan stood up or reached for his waistband area—two important factors that Cotton relies upon for justifying his use of deadly force—summary judgment must be denied. *See* Ex. 1, 81:15–20; Ex. 3 at 149:20–23, 150:14–17, 152:8–13; Ex. 6 at 100:18–101:2; Ex. 13; Ex. 16 at 12:10–15.

12. Further, Defendants' argument that the disputed facts are immaterial is unconvincing because the genuine fact issues in this case are material to the objective reasonableness of Defendants' conduct. Cotton, for example, argues that an officer could

reasonably have believed that his conduct was objectively reasonable under the totality of the circumstances. Plaintiffs, however, dispute the facts that comprise the totality of the circumstances on which Cotton relies. Now that he's been sued and is faced with the consequences of his conduct, Cotton claims that Robbie Tolan stood up and reached for his waistband and that those acts were very important factors in his decision to shoot. Ex. 1, 81:15–20. In reality, Robbie Tolan did neither of those things. Ex. 3 at 149:20–23, 150:14–17, 152:8–13; Ex. 6 at 100:18–101:2; Ex. 13; Ex. 16 at 12:10–15. Because "[t]he facts supporting [Cotton's use of force] are in serious dispute and turn on a credibility determination that can only be made by a jury," the objective reasonableness of Cotton's conduct cannot be determined as a matter of law and summary judgment must be denied. *Harper*, 21 F.3d at 602.

### III.  PLAINTIFFS HAVE ALLEGED VIOLATIONS OF THEIR CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

13. Defendants suggest that Plaintiffs have failed to allege violations of their clearly established constitutional rights. As discussed in Plaintiffs' Response, with respect to Plaintiffs' Fourth Amendment claims, "[i]t is well settled that if a law enforcement officer uses excessive force . . . the Fourth Amendment guarantee against unreasonable seizure is implicated." *Harper*, 21 F.3d at 600. *See Bazan*, 246 F.3d at 490 ("The first step is to determine whether plaintiff alleged a violation of a clearly established constitutional right. The parties do *not* dispute this prong; as noted *supra*, 'apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.'") (internal citations omitted) (emphasis in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Wilson v. Layne*, 526 U.S. 604, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999); *see also Harlow v.*

7

*Fitzgerald*, 457 U.S. 800, 818–19, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (where the law in question is clearly established, a qualified immunity defense should fail because a reasonably competent officer should know the law governing his conduct).

14. Although Cotton relies on the "totality of the circumstances"—which includes the admittedly important factors of Robbie Tolan allegedly rising to his feet while simultaneously gesturing towards and/or "digging" in his waistband, depending on which of his versions of events Cotton decides to rely upon—to justify shooting Robbie Tolan in the chest, **Robbie Tolan denies that he stood up or that he gestured toward his waistband**. *See* Ex. 3 at 149:20–23, 150:14–17, 152:8–13; Ex. 6 at 100:18–101:2, 146:5–20; Ex. 13. As such, Plaintiffs have alleged that Cotton's use of deadly force was clearly excessive and clearly unreasonable under the totality of the circumstances and have therefore alleged a violation of Robbie Tolan's Fourth Amendment rights. *See Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996) ("To prevail on an excessive force claim, a plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.") (internal quotations, citations, and footnotes omitted); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir. 2000) ("[S]ummary judgment is inappropriate unless plaintiff's version of the violation does not implicated clearly established law.").

15. Robbie Tolan's Fourth Amendment rights were clearly established at the time because any reasonable officer, through his training, would have known that using deadly force was improper because no reasonable officer could have believed that Robbie Tolan—who did not stand up and who did not reach toward his waistband—posed an immediate threat of serious harm. *See* Ex. 12 at ¶¶ 30, 42, 66. Cotton's unsubstantiated and self-serving explanation that Robbie Tolan reached for his waistband does not automatically cloak him with immunity. This

is **not** a case in which an officer might have correctly perceived all of the relevant facts, but have had a mistaken understanding as to whether a particular amount of force was legal in those circumstances. *See Saucier v. Katz*, 533 U.S. 194, 206,121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Rather, this is a case in which an officer relies upon facts that Plaintiffs dispute ever occurred. *Saucier*—which simply involved a military police officer who, without causing any injury, shoved and then removed a suspected protester who approached Vice President Al Gore during an event, and which did not involve any dispute over whether the protester actually moved towards the Vice President—is therefore distinguishable. *See id.* at 197–99. *See also Pearson*, 129 S. Ct. at 815–21 (discussing countless criticisms of *Saucier*'s rigid approach to resolving qualified immunity issues).

16. Because there are factual disputes regarding Robbie Tolan's conduct leading up to Cotton's use of deadly force, the issue of whether Cotton violated Robbie Tolan's constitutional rights cannot be determined in favor of Defendants on summary judgment. Furthermore, at this stage, Defendants simply cannot rely upon their version of events to conclude that an officer could have had reason to believe that the use of deadly force was justified. *See* Defs.' Reply at ¶ 8 ("Foremost, the pertinent question is whether an officer could reasonably have perceived the totality of the circumstances Sgt. Cotton encountered as a threat of serious harm, not necessarily whether any of the claimed discrete disputed facts existed or occurred."), *contra Bazan*, 246 F.3d 490–92 ("[O]*n summary judgment*, the objective reasonableness inquiry is a question of law; in other words, this question of law *cannot* be decided if there are *genuine issues of material fact . . . .* [D]eciding what occurred when deadly force was employed obviously will control whether the Trooper's conduct was *objectively reasonable . . . .*") (emphasis in original). The events that

*actually* occurred on the night Cotton attempted to kill Robbie Tolan on his own front porch, however, demonstrate that any reasonable officer would have known that the use of deadly force was unwarranted against Robbie Tolan because no reasonable officer, in light of his training regarding the use of deadly force, could have believed that Robbie Tolan posed an immediate threat of serious harm to anyone.

17.  Plaintiffs have likewise established that Cotton's use of force against Marian Tolan was clearly excessive and clearly unreasonable—from the perspective of any reasonable officer—under Plaintiffs' version of events—*see* Pls.' Response at ¶¶ 55–63; Ex. 3 at 149:20–23; Ex. 4 at 64:16–65:11; Ex. 9 at 101:1–104:6; Ex. 10; Ex. 11—and that Defendants' violated Plaintiffs' rights to equal protection of the law, which were clearly established at the time of deprivation.  *See* Pls.' Response at ¶¶ 64–79; Ex. 13; Ex. 15; Ex. 17 at 124:18–125:15.

## CONCLUSION

18.  Plaintiffs' allegations and the evidentiary record establish the existence of genuine issues of material fact that must be resolved by the trier of fact.  Because these genuine issues of material fact preclude summary judgment in favor of Defendants on their defense of qualified immunity, Plaintiffs request that the Court deny Defendants' motion for summary judgment.

          Respectfully Submitted,

          /s/ Geoffrey Berg
          Geoffrey Berg
          Texas Bar No. 00793330
          David Berg
          Texas Bar No. 02187000
          Stephanie A. Gutheinz
          Texas Bar No. 24069841
          BERG & ANDROPHY
          3704 Travis Street
          Houston, Texas 77002
          Telephone: 713.529.5622
          Facsimile: 713.529.3785

          George R. Gibson
          Texas Bar No. 00793802
          Marvin Nathan
          Texas Bar No. 14817000
          NATHAN SOMMERS JACOBS
          2800 Post Oak Boulevard, 61st Floor
          Houston, Texas 77056-6102
          Telephone: 713.960.0303
          Facsimile: 713.892.4840

          **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2011, a true and correct copy of the foregoing was sent electronic delivery, certified mail, hand delivery, and/or facsimile as follows:

William S. Helfand
Norman Giles
Chamberlain, Hrdlicka, White, Williams & Martin
1200 Smith, Suite 1400
Houston, Texas 77002

          /s/ Geoffrey Berg
          Geoffrey Berg