IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT R. TOLAN, MARIAN TOLAN, BOBBY TOLAN, AND ANTHONY COOPER, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:09-1324 |
| JEFFREY WAYNE COTTON; JOHN C. EDWARDS; RANDALL C. MACK, CHIEF OF POLICE; BYRON HOLLOWAY, ASSISTANT CHIEF OF POLICE; CYNTHIA SIEGEL, MAYOR; BERNARD SATTERWHITE, CITY MANAGER; THE CITY OF BELLAIRE; AND THE BELLAIRE POLICE DEPARTMENT, | § § § § § § § § § § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUR-REPLY TO DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Officer John Edwards and Sergeant Jeffrey Cotton, file their response to the Plaintiff's sur-reply to the Defendants' reply to the Plaintiffs' opposition to Defendants', Edwards and Cotton, motion for summary judgment. These Defendants would respectfully show the Court as follows:

ARGUMENTS AND AUTHORITIES

**A Jury Cannot Assist the Court in Resolving the Legal Question of Immunity**

1.       The Court should grant the Defendants' motion for summary judgment based upon Sergeant Cotton and Officer Edwards' assertion of qualified immunity because a jury cannot assist the Court in resolving the legal question of the Officers' entitlement to immunity here.

1

2.	The Supreme Court has consistently "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536 (1991); accord *Saucier v. Katz*, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 2156 (2001); *see also Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). This is so, in part, because qualified immunity shields a public official from not only liability, but also the burdens of unnecessary trial. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1946 (2009); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986); *In re Montgomery County*, 215 F.3d 367, 374-75 (3rd Cir. 2000). Therefore, a reviewing court should resolve the immunity question when it can do so, as here, without further clarification of the facts. *See Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042 (1987); *Ashcroft supra*; *Lion Boulos, v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987). Accordingly, as a threshold issue, "[m]otions for summary judgment based on qualified immunity are, in the normal course of events, to be resolved as a matter of law." *Mangieri v. Clifton*, 29 F.3d 1012, 1015-16 (5th Cir. 1994).

3.	The Court has the fully developed factual record before it and no further clarification of the operative facts is necessary for the Court to resolve the *legal question* of the Officers' immunity which, succinctly put is whether, "on the specific circumstances of the incident-could an officer have reasonably interpreted the law to conclude that the perceived threat posed by [Robbie Tolan] was sufficient to justify deadly force?" *See Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n. 1 (5th Cir. 2009). The controlling Fourth Amendment standard plainly demands that the reasonableness of Sgt. Cotton's decision to fire "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v.*

*Conner*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). "The calculus of reasonableness [in this case] must embody allowance for the fact that police officers [like Sgt. Cotton and Officer Edwards] are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872. "If [Sgt. Cotton] reasonably, but mistakenly, believed that [Robbie Tolan] was likely to fight back, for instance, [Sgt. Cotton] would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 204, 121 S. Ct. 2151, 2158 (2001).

4. The summary judgment record does not contain any factual *evidence* which shows that Sgt. Cotton's uses of force were not within a range of reasonable options that a reasonable police officer "could have believed" lawful, as Plaintiffs are required to adduce to overcome the presumption of immunity to which Sgt. Cotton is entitled. *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158. Qualified immunity operates in this case, then, just as it does in others, to protect [Sgt. Cotton] from the sometimes "hazy border between excessive and acceptable force," *Priester v. Riviera Beach,* 208 F.3d 919, 926-927 (C.A.11 2000), and to ensure that before [he is] subjected to suit, [all] officers are on notice their [comparable] conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158. This is the applicable legal standard for evaluating Sgt. Cotton's claim to immunity, as a matter of law, and application of the standard establishes that he is entitled to summary judgment in his favor.

5. The relevant legal standard is not, as the Tolans urge, whether they or their attorneys can concoct some *version* of the events, not objectively supported by the record evidence, that they *believe* may show a Fourth Amendment violation. This case involves a claim of an intentional use of unconstitutional force based upon a law enforcement officer's decision to fire his duty

3

weapon during an investigation.  Therefore, the Court's task is to evaluate the accused *police officer's actions* through the objective perspective of a reasonable police officer on the scene, as that standard has been enunciated by the Supreme Court and applied by the Fifth Circuit Court of Appeals in like police shooting cases over at least 25 years. *See Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985); *Reese v. Anderson*, 926 F.2d 494, 500-01 (5th Cir. 1991); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992); *Mace v. City of Palestine*, 333 F.3d 621, 622-23 (5th Cir. 2003); *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007); *Ontiveros*, 564 F.3d at 382; *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009).  It is not, as Plaintiffs suggest, evaluating the Officers' conduct under common law tort theories.

6.      Moreover, this Court is not required to apply these controlling standards, as the Tolans urge, to the Tolans' mere allegations and argument but, instead, must apply these standards to the admissible evidentiary materials within the summary judgment record. *See* FED.R.CIV.P. 56(c); *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1776, 1779 (2007); *Bazan v. Hidalgo County*, 246 F.3D 481, 490 (5th Cir. 2001); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996); *Fraire*, 957 F.2d at 1273. Analysis of the law and operative facts in this case show that Sgt. Cotton and Officer Edwards are entitled to summary judgment in their favor.

### *There is No Disputed Material Fact*

7.      There is simply no factual dispute in the summary judgment evidence which is material to resolution of Officer Edwards's or Sgt. Cotton's claims to immunity. Although the Tolans initially argued that alleged factual disputes existed regarding whether Robbie Tolan only rose to his knees and made no threatening movements toward his waistband {*Doc. no. 70 at ¶ 45*}, the Tolans now admit that Tolan "was on his feet," not his knees at the time of the shooting. {*Doc.

*no. 75, ¶1*}. While Sgt. Cotton has never placed any particular significance on the specific height Robbie Tolan reached from the ground as a litmus test of the reason Sgt. Cotton fired in self-defense, this is one of the alleged disputes the Tolans have previously argued preclude summary disposition of this case in Sgt. Cotton's favor. {*Doc. no. 70, ¶¶ 47, 49; Doc. no. 72, ¶¶ 5, 12; Doc. no. 75, ¶ 12*}. When confronted with Robbie Tolan's testimonial admission that he stood on his feet against the front door, the Tolans now only argue the purported – and wholly irrelevant - reason *why* Robbie Tolan "was on his feet."[1] {*Doc. no. 75*}. Nonetheless, even crediting the Tolans' *magic bullet* argument regarding the alleged reason *why* Robbie Tolan claims[2] he rose to his feet, there is still no longer any dispute that an officer on the scene could reasonably have perceived, and later reported, that Tolan rose to his feet after spinning toward Sgt. Cotton. That formerly alleged dispute, therefore, is now resolved and cannot preclude summary judgment.

8. Therefore, the Tolans are now left with their lone argument that Robbie Tolan did not reach for his waistband. Again, however, the pertinent question is not whether Tolan did, or did not, "reach for his waistband." Instead, **the *only* relevant issue is whether the Plaintiffs have proven that no police officer on the scene could reasonably have interpreted the totality of the actions the summary judgment record evidences that Robbie Tolan engaged in to justify firing in self defense**. *See Ontiveros*, 564 F.3d at 383. The summary judgment record undeniably shows, in as great a detail as conceivably possible, the actions Robbie Tolan took. Therefore, it is difficult to understand how a jury could possibly further clarify these facts

---

[1] Plaintiffs urge the absurd argument that a ½ ounce projectile could raise a 160 pound man from his knees to his feet, contrary to the recognized laws of physics. FED.R.EVID. 201. This assertion is even more preposterous when placed in the context of the Plaintiffs' contentions. Their ludicrous argument is that Sgt. Cotton stood above Robbie Tolan, who was allegedly down on the ground on his knees, that Sgt. Cotton fired a shot from above Robbie Tolan that sent a bullet downward through his body and that the ½ ounce bullet from this shot mystically reversed direction and *raised* Tolan to his feet in an instant.

[2] Obviously, Tolan cannot self-create a dispute in his own testimony that can support the denial of Sgt. Cotton's motion for summary judgment based upon immunity.

5

regarding Robbie Tolan's movements in a way that would be necessary for the Court to apply clearly established legal standards to resolve the legal question of immunity. Even if the Tolans could devise, and even demonstrate during trial, some unusual method by which one might be able to rise from a prone position on the ground, quickly revolve his body 180 degrees, and raise to his knees or feet, without his hand passing in the vicinity of his waistband; Tolan nonetheless could still not claim at trial that he moved by a unique method because he has admitted, unequivocally, that he was not paying attention to the manner in which he raised his body from the ground and spun toward Sergeant Cotton. The best he can do is offer a "guess" about how he might have moved and he has already done that at length. {*Ex. 15, p. 101, l. 9-p. 102, l. 9*}. Sadly, Plaintiffs' briefing is based in musings about how their case *could* be argued, by their counsel, to misdirect a lay person to apply some standard other than that required for an appropriate analysis of immunity.

9.	Certainly, the summary judgment record is barren of any admissible evidence from which a jury could reasonably find, viewed as required from the perspective of a reasonable police officer on the scene, that no officer could have reasonably interpreted the many actions Robbie Tolan admits he took as a threat that authorized Sgt. Cotton to fire in self-defense. Indeed, directly contrary to the Tolans' insupportable argument {*Doc. no. 75, ¶ 4*} that "nowhere in any report does any expert conclude that Defendants' conduct was objectively reasonable in light of Plaintiffs' version of the facts," both Lieutenant Albert Rodriguez, speaking as a law enforcement training expert, and Dr. William Lewinski, speaking as an expert on law enforcement perception and action/reaction training, did just that. {*Ex. 28, p. 30, l. 18-p. 32, l. 13; p. 32, l. 21-p. 33, l. 13; p. 33, l. 23-p. 34, l. 15; p. 36, ll. 1-11; p. 36, l. 16-p. 37, l. 5p. 85, ll. 11-20; p. 85, l. 21-p. 88, l. 11; p. 116, l. 12-p. 117, l. 17; Exs. 27, 29*}.

10. Clearly, the Tolans have not met *their burden* to identify any *factual* dispute that must be resolved by a jury. The Court should apply clearly established law and determine Officer Edwards and Sgt. Cotton's entitlement to qualified immunity as a matter of law, as required by Supreme Court and Circuit authority. *See Fraire*, 957 F.2d at 1273.

*Plaintiffs' Silence Regarding Controlling Legal Authority & Training Standards is Deafening*

11. Perhaps most telling of the Tolans' failure to meet their burden is the fact that they have not identified any competent authority that could refute Officer Edwards's and Sergeant Cotton's entitlement to immunity. Notably, the Tolans abject failure to even address the controlling legal authority or training standards is most telling. Although Officer Edwards and Sgt. Cotton have plainly identified, and consistently averred, that the statutory provisions pertaining to law enforcement officer training through the Texas Commission on Law Enforcement Standards and Education (TCLEOSE), and the relevant legal decisions from the Fifth Circuit Court of Appeals, such as *Young*, 775 F.2d at 1352-53; *Reese*, 926 F.2d at 500-01; *Fraire*, 957 F.2d at 1275-76; *Ontiveros*, 564 F.3d at 384; *Hathaway*, 507 F.3d at 312; *Manis*, 585 F.3d at 844; *Mace v. City of Palestine*, 333 F.3d 621, 622-23 (5th Cir. 2003), provide the parameters by which applicable clearly established law must be determined in this case; the Tolans have not mounted any challenge to the officers' showing in this regard. The Tolans thus have failed to controvert the Officers' evidentiary proof, or to distinguish the statutory or decisional authority the Officers' rely upon.

12. Prominently, the Tolans only consideration of *Ontiveros, supra,* is limited to "[i]n other words, [t]o negate a defense of qualified immunity, the plaintiff need not present 'absolute proof…" {*Doc. no. 70, p. 10, ¶ 35*}. In that citation, the Tolans understandably chose to parse the sentence to fit their weak case, and perhaps mislead the court, by inserting an ellipse in place of

7

the holding "but must offer more than 'mere allegations.'" *Ontiveros*, 564 F.3d at 382. The Tolans do not otherwise address the *Ontiveros* holding, at all and this is likely due to the fact that it is undeniably fatal to their case.

13. Likewise, the Tolans only consideration of *Manis, supra,* is limited to "[t]he focus of the inquiry is 'the act that led [the officer] to discharge his weapon," {*Doc. no. 70, p. 15, ¶ 45*}, and "the focus of the inquiry is the act that led the officer to discharge his weapon," {*Doc. no. 70, p. 16, ¶ 48*}. These basic statements do nothing to support the Tolans' contentions and plainly fail to controvert the evidence of the reasonableness of both Officers' conduct.

14. Moreover, the Tolans do not acknowledge that the *Manis* plaintiffs made a hoard of factual assertions, similar to the Tolans here, that the *Manis* Court found not to be material to resolution of Officer Zemlik's claim to immunity. *See Manis*, 585 F.3d at 844-45. "None of these assertions, however, bear on whether Manis, in defiance of the officer's contrary orders, reached under the seat of his vehicle and appeared to retrieve an object that Zemlik reasonably believed to be a weapon." *See Manis*, 585 F.3d at 845. As in *Ontiveros* and *Manis*, the Tolans "are attempting to use [] undisputed facts to imply a speculative scenario that has no factual support." *See Ontiveros*, 564 F.3d at 383; *Manis*, 585 F.3d at 845. The Tolans do not try to explain that *Manis* can be understood to show otherwise.

15. Prominently, the Tolans do not even address the controlling holding in *Young*, *Reese*, *Fraire*, *Hathaway*, *Mace*, or any TCLEOSE training standard, even though the Officers', like the courts, also rely heavily upon these authorities as the pertinent basis for determining applicable clearly established law.

16. The Tolans do identify *Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001) and the unpublished decision in *Reyes v. Bridgwater*, 362 Fed.Appx. 403 (5th Cir. 2010) as claimed

support for their contentions, but even these decisions provide no basis for denying immunity to Sgt. Cotton or Officer Edwards. The *Ontiveros* Court, when considering the significance of *Bazan,* found, as this Court must on the record before it, that;

> The issues raised by the [plaintiffs] do not create the kind of genuine dispute that can overcome summary judgment in excessive force cases involving police shootings. The cases to which [plaintiffs] point are clearly distinguished. In *Bazan v. Hidalgo County*, for instance, witness testimony differed from the officer's, and the use of force was explained by events for which corroborating evidence should have been available.
> …
> [Plaintiffs] here, unlike in [that] case[], offer only their own conjecture arising from undisputed facts that do not materially contradict [Sgt. Cotton's] testimony.

*Ontiveros*, 564 F.3d at 385.

17. Additionally, *Bazan* specifically "emphasize[d] the narrow factual situation in which this case addresses-one in which *the sole surviving witness* to the central events is the defendant himself, an interested witness." *Bazan*, 246 F.3d at 493. Unlike *Bazan*, no one was killed in the instant case and several witnesses to the shooting, including the individual who was shot, provided testimony here. Also, the witness's testimony in the instant matter can reasonably be reconciled with, and for the most part, corroborate Sgt. Cotton's testimony. Shortly after firing, Sgt. Cotton asked Robbie Tolan what he was reaching for, Officer Edwards' testimony essentially corroborates many of the observations Sgt. Cotton reported, and even the Tolans' various accounts of the relevant events corroborate that an objective officer on the scene could reasonably have perceived Robbie Tolan's established actions as creating sufficient justification to fire in self-defense. Therefore, *Bazan* provides no support for the Tolans' contentions.

18. Furthermore, even if not readily distinguishable from this case, the **unpublished** opinion in *Reyes v. Bridgwater*, 362 Fed.Appx. 403 (5th Cir. 2010) could not have provided an objective officer, in Sergeant Cotton or Officer Edwards' situation, with fair notice their conduct would

9

have been prohibited in light of the weight of the many **published** decisions which counsel the very opposite. Regardless, *Reyes* is nonetheless plainly distinguishable from the instant case. Reyes involved a case in which Officer Bridgewater testified that the decedent acted in an aggressive manner, stepped toward the officer from a distance and raised a knife in a threatening motion. The decedent's family members who witnessed the shooting provided contrary testimony that the decedent did not act aggressively toward Officer Bridgwater, did not step toward Officer Bridwater and did not raise the knife. The *Bridgwater* Court cited these disputed facts and additionally found that an objective officer could not reasonably have interpreted the decedent's shown actions as posing an immediate risk of serious harm to the officer because, the case did not involve an individual suspected of a crime, there was a safe distance (yards) between the officer and the decedent, Officer Bridgewater knew the weapon the decedent possessed was a knife, and the potential threat of the decedent's knife, unlike a firearm, would not become immediate until after the decedent took some additional action to place the knife in use.

19. Unlike in *Bridgwater*, an objective police officer on the scene could reasonably have perceived Robbie Tolan's proven actions as creating an immediate risk of serious harm to Sgt. Cotton as Dr. Lewinski and Lt. Rodriguez have fully explained. Tolan was suspected of involvement in a felony crime and was acting aggressively toward Sgt. Cotton, Tolan was not a safe distance from Sgt. Cotton, Sgt. Cotton did not know what type of weapon Tolan may have access to but suspected it may be a firearm. Regardless, however, either a knife or a firearm would have posed an imminent risk to Sgt. Cotton from the distance between Cotton and Tolan in this case. Most prominently, however, Tolan had already executed the "acts" which rendered the potential threat to Sgt. Cotton immediate. Therefore, unlike the options still available to Officer Bridgewater, but like Lt. Logan's circumstances in *Ontiveros*, Sgt. Cotton was required to

act in self defense when he did, or not at all. {*Exs. 27, 29*}. Accordingly, the Tolans have not identified any authority to support their argument against immunity.

## CONCLUSION

20. The Tolans have wholly failed to satisfy *their* burden to negate either officer's immunity by identifying sufficient evidence to rebut the Officers' defenses. The summary judgment record, when viewed from the perspective of a reasonable police officer on the scene not aided by hindsight, fails to even show that Officer Edwards or Sgt. Cotton engaged in unconstitutional conduct and certainly fails to show that either officer could not reasonably have believed his conduct was permissible in light of clearly established law. Although necessary to avoid dismissal of their claims, the Tolans have not identified any genuine dispute of material fact which could preclude judgment in favor of Officer Edwards and Sgt. Cotton.

21. The record evidence shows the contrary that no violation of the 4th or 14th Amendment occurred. Regardless, even if any constitutional deprivation had occurred, the uncontroverted record nonetheless establishes that neither of them violated a clearly established right and that any officer could reasonably have believed that Officer Edwards and Sgt. Cotton's conduct was objectively reasonable. Therefore, the summary judgment record before the Court establishes that the claims the Tolans have asserted against Officer Edwards and Sgt. Cotton are not cognizable, under controlling law, so the Officers are both entitled to summary judgment in their favor.

        Respectfully Submitted,

        CHAMBERLAIN, HRDLICKA, WHITE,
          WILLIAMS & MARTIN

By:   /s/ Norman Ray Giles
      WILLIAM S. HELFAND
      SBOT: 09388250
      NORMAN RAY GILES
      SBOT: 24014084
      1200 Smith Street, Suite 1400
      Houston, Texas 77002
      (713) 654-9630
      (713) 658-2553 (Fax)
      ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on this 9th day of March, 2011, as follows:

Geoffrey Berg
BERG & ANDROPHY
3704 Travis Street
Houston, Texas 77002

                /s/ Norman Ray Giles

0822428.01
003856-000226:3/9/2011