IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

F I L E D
April 25, 2013

Lyle W. Cayce
Clerk

No. 12-20296

ROBERT R. TOLAN; MARIAN TOLAN,

                                        Plaintiffs - Appellants

v.

JEFFREY WAYNE COTTON,

                                        Defendant - Appellee

United States Courts
Southern District of Texas
FILED

AUG 0 6 2013

David J. Bradley, Clerk of Court

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1324

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge.

    Primarily at issue in this appeal from a summary judgment is qualified immunity's being granted for a police officer's use of deadly force against a felony suspect, injuring him. This action concerns the various claims of four plaintiffs against numerous defendants; the appeal is from a Federal Rule of Civil Procedure 54(b) judgment (partial final judgment capable of immediate appeal). This appeal involves only two of the plaintiffs and one of the defendants.

    After summary judgment, based on qualified immunity, was awarded police officers Jeffrey Wayne Cotton and John C. Edwards against the four plaintiffs, the Rule 54(b) judgment was entered for the two Officers. Only Robert

R. Tolan (Robbie Tolan) and his mother, Marian Tolan, appeal from that judgment, however; and they challenge only the judgment in favor of Sergeant Cotton. In doing so, they contest the underlying summary judgment, based on qualified immunity, awarded Sergeant Cotton against their excessive-force claims. Because no genuine dispute of material fact exists for whether Sergeant Cotton's directing deadly force at Robbie Tolan and non-deadly force at Marian Tolan was objectively unreasonable in the light of clearly-established law, the Rule 54(b) judgment in favor of Sergeant Cotton is AFFIRMED.

## I.

For the reasons provided *infra*, the following facts are presented, as they must be on summary-judgment review, in the light most favorable to Robbie and Marian Tolan.

While patrolling shortly before two o'clock in the morning on 31 December 2008, in Bellaire, Texas, Officer Edwards noticed a black Nissan turn abruptly onto a residential street. Officer Edwards became suspicious immediately because 12 vehicles had been burglarized in Bellaire the previous night, and he knew the street terminated in a cul-de-sac. Surveilling the Nissan from a distance, Officer Edwards observed Robbie Tolan and Anthony Cooper park on the street in front of a house and exit the vehicle. Officer Edwards drove past the vehicle and entered its license-plate number into his mobile data terminal (MDT). Officer Edwards mistakenly keyed an incorrect character; his entry resulted in a match with a stolen vehicle of the same make and approximate year of manufacture. The MDT sent a message automatically to other police units, alerting them Officer Edwards had identified a stolen vehicle.

Officer Edwards next approached the vehicle and, observing Robbie Tolan and Cooper carrying items from the vehicle to the house, illuminated them with his cruiser's spotlight. Officer Edwards exited his cruiser, drew his service pistol and flashlight, identified himself as a police officer, and ordered Robbie Tolan

and Cooper to "come here". When Robbie Tolan and Cooper cursed Officer Edwards and refused to comply, Officer Edwards stated to them his belief the black Nissan was stolen and ordered them onto the ground.

Shortly thereafter, Robbie Tolan's parents, Bobby and Marian Tolan, exited the house through the front door. Again, Officer Edwards stated his belief that Robbie Tolan and Cooper had stolen the Nissan; Robbie Tolan and Cooper complied with Officer Edwards' ordering them onto the ground only after Marian and Bobby Tolan ordered them to do so. Bobby Tolan identified Robbie Tolan as his son, and Marian Tolan stated the Nissan belonged to them. Bobby Tolan yelled at Cooper and Robbie Tolan to stay down; and Marian Tolan walked repeatedly in front of Officer Edwards' drawn pistol, insisting no crime had been committed. Dealing with four people in a chaotic and confusing scene, Officer Edwards radioed for expedited assistance. Sergeant Cotton responded and, hearing the tension in Officer Edwards' voice, believed him to be in danger. Sergeant Cotton arrived approximately one and one-half minutes after Officer Edwards' arrival.

Upon his arrival, Sergeant Cotton observed: Officer Edwards with pistol drawn; Bobby Tolan standing to Officer Edwards' left, next to a sport-utility vehicle parked in the Tolans' driveway, where Officer Edwards had ordered him to stand; Marian Tolan "moving around" in an agitated state in front of Officer Edwards; and Cooper lying prone. Sergeant Cotton drew his pistol and moved in to assist. Although Sergeant Cotton did not immediately observe Robbie Tolan, whose form was obscured by a planter on the front porch, Officer Edwards informed Sergeant Cotton that "the two on the ground had gotten out of a stolen vehicle". A single gas lamp in front of the house and two motion lights in the driveway illuminated the scene. In his deposition, Sergeant Cotton described the gas lamp as "decorative" and the front porch, where Robbie Tolan was lying,

3

as "fairly dark"; in his deposition, Bobby Tolan stated the gas lamp provided enough light to identify a person in the front yard "within reason".

Robbie Tolan was lying face-down on the porch, with his head toward the front door and his arms extended. As noted, a planter on the front porch obscured Robbie Tolan's position from Sergeant Cotton's view.

Sergeant Cotton recognized the immediate need to handcuff and search the felony suspects, but Marian Tolan's movement and demeanor frustrated the Officers' doing so; moreover, Marian Tolan continued to insist the car was not stolen, and stated they had lived in the house for 15 years. In an attempt to control the situation, Sergeant Cotton ordered Marian Tolan to move to the garage door; she refused, and became argumentative. Sergeant Cotton again requested Marian Tolan to move out of the Officers' way, and stated the situation would be worked out after they concluded their investigation. Marian Tolan's protestations continued; when Sergeant Cotton ordered her to "get against the garage", she refused, stating: "Me? Are you kidding?".

In response, Sergeant Cotton holstered his pistol, clutched Marian Tolan's arm, placed his other hand in the small of her back, and attempted to move her to the garage door. Despite her jerking her arm away and screaming "get your hands off me", Sergeant Cotton physically moved her to the garage door so a search of Robbie Tolan and Cooper could be conducted. From this angle, Sergeant Cotton then observed Robbie Tolan lying prone and facing away from Sergeant Cotton; the complaint for this action alleges the distance between Sergeant Cotton and Robbie Tolan was approximately 15 to 20 feet.

Sergeant Cotton's method of handling Marian Tolan angered Robbie Tolan; upon seeing his mother pushed into the garage door and hearing a metallic impact, Robbie Tolan yelled "get your fucking hands off my mom!", pulled his outstretched arms to his torso, and began getting up and turning toward Sergeant Cotton. Fearing Robbie Tolan was reaching towards his waistband for

a weapon, Sergeant Cotton drew his pistol and fired three rounds at Robbie Tolan, striking him once in the chest and causing serious internal injury. At the time, Robbie Tolan was wearing a dark zippered jacket, known as a "hoodie", which was untucked and hung over the top of his trousers, concealing his waistband. A subsequent search revealed Robbie Tolan was unarmed. Between Sergeant Cotton's arriving on the scene and his discharging his pistol, a mere 32 seconds elapsed.

In April 2009, Sergeant Cotton was charged in a state-court indictment with one count of aggravated assault by a public servant. A jury acquitted Sergeant Cotton in May 2010. As noted *infra*, excerpts from Sergeant Cotton's criminal trial, including testimony by Sergeant Cotton, Officer Edwards, and the Tolans, are in the summary-judgment record.

In May 2009, following Sergeant Cotton's being indicted that April, the Tolans and Cooper filed this action, *inter alia*, pursuant to 42 U.S.C. § 1983 against Sergeant Cotton, Officer Edwards, and the City of Bellaire, claiming, *inter alia*: Sergeant Cotton and Officer Edwards violated Robbie and Marian Tolan's right to freedom from excessive force (under Fourth Amendment, incorporated in Fourteenth); and both Officers acted in furtherance of a City of Bellaire official policy of racial profiling and discrimination. The Officers invoked qualified immunity in their answer, and, after discovery, moved for summary judgment on that basis.

The district court, in an extremely detailed and well-reasoned opinion, granted the Officers' summary-judgment motion, based on qualified immunity; it held the Tolans and Cooper had not shown a constitutional violation, as required by the first of two prongs for qualified-immunity analysis, discussed *infra*. *Tolan v. Cotton*, 854 F.Supp. 2d 444, 478 (S.D. Tex. 2012). Finding there was "no just reason for delay", it entered final judgment for the Officers under Federal Rule of Civil Procedure 54(b).

## II.

For an action involving multiple parties, a district court may enter final judgment for fewer than, *inter alia*, all parties if it "expressly determines that there is no just reason for delay". FED. R. CIV. P. 54(b). "If the language in the order appealed from . . . reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc). Re-stated, a Rule 54(b) judgment is a final decision capable of immediate appellate review pursuant to 28 U.S.C. § 1291. *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 583-84 (1980); *Elizondo v. Green*, 671 F.3d 506, 509 (5th Cir. 2012).

Of the four plaintiffs, only Robbie and Marian Tolan contest the summary judgment. Moreover, they only contest its being awarded Sergeant Cotton.

A summary judgment is reviewed *de novo*. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir.1999). Summary judgment is proper if movant shows: no genuine dispute as to any material fact; and being entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (internal citation and quotation marks omitted). "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (internal citation and quotation marks omitted). In that regard, all facts and inferences are construed in the light most favorable to non-movants. *E.g., Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). But, for review of a summary judgment upholding qualified immunity, plaintiff bears the burden of showing a genuine dispute of material fact. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (qualified-immunity defense alters summary judgment burden of proof).

No. 12-20296

Extensive discovery has been conducted. Sergeant Cotton supported his summary-judgment motion with, *inter alia*: portions of his, Officer Edwards', and Robbie, Marian, and Bobby Tolan's depositions; and portions of Doctor William Lewinski's and Lieutenant Albert Rodriguez' expert-witness depositions, as well as their declarations, to which their expert reports were attached. Robbie and Marian Tolan supported their opposition to that motion with, *inter alia*: portions of Sergeant Cotton's and Officer Edwards' depositions and trial testimony; portions of Robbie Tolan's deposition and trial testimony, and his declaration; portions of Marian and Bobby Tolan's depositions and trial testimony; portions of Dr. Lewinski's deposition; and portions of Lt. Rodriguez' expert report and deposition.

Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties, *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), by shielding from suit all but the "plainly incompetent or those who knowingly violate the law", *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal citation and quotation marks omitted); *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985) (qualified immunity is immunity from suit, not merely an affirmative defense to liability). As noted, after defendant properly invokes qualified immunity, plaintiff bears the burden to rebut its applicability. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To abrogate a public official's right to qualified immunity, plaintiff must show: first, the official's conduct violated a constitutional or statutory right; and second, the official's "actions [constituted] objectively unreasonable [conduct] in [the] light of clearly established law at the time of the conduct in question". *Brumfield*, 551 F.3d at 326.

For an excessive-force claim, plaintiff clears the first prong of the qualified-immunity analysis at the summary-judgment stage by showing a genuine dispute of material fact for whether plaintiff sustained: "(1) an injury

(2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was clearly unreasonable". *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Hill v. Carroll Cnty.*, 587 F.3d 230, 234 (5th Cir. 2009)).

For the second prong at the summary-judgment stage, plaintiff must similarly show a genuine dispute of material fact for two distinct, but intertwined, elements. "The second prong of the qualified immunity test is [] understood as two separate inquiries: whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the [defendant's conduct] was *objectively unreasonable* in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) (first emphasis in original) (second emphasis added).

In the excessive-force context at issue here, although the long-established two prongs of qualified-immunity analysis contain "objective reasonableness" elements, those prongs remain distinct and require independent inquiry. *Brumfield*, 551 F.3d at 326. Importantly, the sequence of analysis is immaterial, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009): qualified immunity may be granted without deciding the first prong if plaintiff fails to satisfy the second, *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010). Deciding the second prong first is often advisable; for example, if, as here, a constitutional right is claimed to have been violated (first prong), "this approach [of first addressing the second prong] comports with [the] usual reluctance to decide constitutional questions unnecessarily". *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

### A.

Contesting the summary judgment based on qualified immunity, Robbie Tolan contends a genuine dispute of material fact exists for whether Sergeant Cotton could have reasonably perceived him as a threat which justified the use of deadly force. He asserts a reasonable officer on the scene should have

possessed information that Robbie Tolan was neither armed nor dangerous, thereby reducing the perceived threat level and negating any belief deadly force was necessary. Along that line, he relies on Marian and Bobby Tolan's exiting the house wearing pajamas and insisting Robbie Tolan and Cooper did not steal the vehicle. Robbie Tolan cites case law from other circuits for the proposition that this "updated information" negated any impression Sergeant Cotton may have had that deadly force could be reasonable. He disputes also Sergeant Cotton's maintaining Marian Tolan was shoved into the garage door so Sergeant Cotton could address a perceived threat; instead, Robbie Tolan contends he reacted *because* his mother was shoved into the garage door. Finally, asserting he never reached toward or into his waistband as claimed by Sergeant Cotton, Robbie Tolan relies on our court's unpublished opinion in *Reyes v. Bridgwater*, 362 F. App'x 403 (5th Cir. 2010), for the proposition that this disputed location of his hands is a genuine dispute of material fact, precluding summary judgment and, accordingly, mandating reversal.

The undisputed summary-judgment evidence, however, shows: Officer Edwards and Sergeant Cotton believed they were dealing with a felony vehicle theft; multiple burglaries of vehicles had occurred in the area the night prior; the Tolans' front porch was not well lit; Robbie Tolan, in spite of Officer Edwards' having drawn his pistol, disobeyed orders to remain prone while the Officers attempted to establish order and investigate the situation; and Robbie Tolan's moving to intervene in Sergeant Cotton's separating his mother was preceded by his shouting "get your fucking hands off my mom!".

Viewing the summary-judgment record in the light most favorable to him, Robbie Tolan has not met his burden to show a genuine dispute of material fact, *Michalik*, 422 F.3d at 262, for whether Sergeant Cotton's conduct was objectively unreasonable in the light of clearly established law, *Brumfield*, 551 F.3d at 326. Accordingly, as discussed *infra*, and although based on a prong of qualified-

immunity analysis different from that relied upon by the district court, Sergeant Cotton is entitled to qualified immunity; his actions being required to "be judged from the perspective of a reasonable officer on the scene" steers the analysis to that conclusion. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

### 1.

Exercising the above-referenced "usual reluctance to decide constitutional questions unnecessarily", *Reichle*, 132 S. Ct. at 2093, we do not reach whether Sergeant Cotton's shooting Robbie Tolan violated his Fourth Amendment right against excessive force (as noted, the district court relied on this first prong of qualified-immunity analysis). As discussed above, showing violation of a constitutional right does not end the inquiry when qualified immunity properly has been invoked. Sergeant Cotton is entitled, through summary judgment, to qualified immunity under the second prong of the analysis.

### 2.

A right is sufficiently clear, and therefore "clearly established", when "every 'reasonable official would have understood that what he is doing violates that right'". *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must [] place[] the statutory or constitutional question beyond debate". *al-Kidd*, 131 S. Ct. at 2083. This "clearly-established" standard balances the vindication of constitutional or statutory rights and the effective performance of governmental duties by ensuring officials can "reasonably . . . anticipate when their conduct may give rise to liability for damages". *Davis v. Scherer*, 468 U.S. 183, 195 (1984). As discussed *supra*, this second-prong question of whether the law was *clearly established* cannot be untethered from the concomitant question of whether the challenged conduct was *objectively unreasonable* in the light of that clearly-established law. *Poole*, 691 F.3d at 630; *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009) (qualified

immunity under the second prong may attach irrespective of constitutional violation under the first, which in the excessive-force context includes a separate objective-reasonableness inquiry).

It is undisputed that, when Sergeant Cotton shot Robbie Tolan, it was also clearly established that an officer had the right to use deadly force if that officer harbored an objective and reasonable belief that a suspect presented an "immediate threat to [his] safety". *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379 (5th Cir. 2009); *Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985). Therefore, for Robbie Tolan to prevent Sergeant Cotton's having qualified immunity, he must show a genuine dispute of material fact on whether "every 'reasonable official would have understood'" Sergeant Cotton's using deadly force was objectively unreasonable under the circumstances and clearly-established law. *al-Kidd*, 131 S. Ct. at 2083; *Poole*, 691 F.3d at 630. To be sure, it was clearly established that shooting an unarmed, non-threatening suspect is a Fourth-Amendment violation. *Tennessee v. Garner*, 471 U.S. 1 (1985). But, that is only half of the equation for second-prong analysis; the remainder depends upon the totality of the circumstances as viewed by a reasonable, on-the-scene officer without the benefit of retrospection. *Poole*, 691 F.3d at 628.

As explained above, an objectively-reasonable officer in Sergeant Cotton's position would have had neither knowledge of, nor reason to suspect, Officer Edwards' having mistakenly identified Robbie Tolan's vehicle as stolen. Justified in his believing – however erroneously in hindsight – Robbie Tolan and Cooper had stolen a vehicle, an objectively-reasonable officer in Sergeant Cotton's position could have also believed Robbie Tolan's verbally threatening him and getting up from his prone position presented an "immediate threat to the safety of the officers". *Deville*, 567 F.3d at 167. Compounding that threat were the surrounding circumstances: the late hour; recent criminal activity in

the area; a dimly-lit front porch; Marian Tolan's refusing orders to remain quiet and calm; and the Officers' being outnumbered on the scene. Robbie Tolan admitted that he drew his outstretched arms toward his chest, did a push-up maneuver, and began turning to his left to face Sergeant Cotton; under the above-described circumstances, these actions could have placed an objectively-reasonable officer in, as Sergeant Cotton testified, fear for his life. Accordingly, whether Robbie Tolan reached into or toward his waistband does *not* create a genuine dispute of material fact on objective reasonableness *vel non*.

As part of the support for his summary-judgment motion, Sergeant Cotton presented expert testimony from Dr. Lewinski and Lt. Rodriguez. In his expert report, Dr. Lewinski stated that, as a matter of science, an officer has only one-quarter of one second to recognize a threat and respond accordingly. Likewise, Lt. Rodriguez stated in his deposition that officers have but a fraction of a second to react to threats. Further, and in the light of these scientific principles, they maintained officers cannot be trained to positively identify a weapon before resorting to deadly force. Robbie Tolan provided no evidence rebutting this expert evidence; yet, even if he had, an officer's right to use deadly force when objectively reasonable under the circumstances is also clearly established and "beyond debate", *al-Kidd*, 131 S. Ct. at 2083 – even when, as here, hindsight proves underlying assumptions to be erroneous. *E.g., Young*, 775 F.2d 1349 (qualified immunity where officer fatally shot unarmed driver who reached under seat); *Ontiveros*, 564 F.3d 379 (same, where officer fatally shot unarmed suspect who reached into boot). In short, Sergeant Cotton's split-second decision to use deadly force does not amount to the type of "plain[] incompeten[ce]" necessary to divest him of qualified immunity. *Brumfield*, 551 F.3d at 326.

Along that line, Robbie Tolan had clear and obvious warning of Officer Edwards' and Sergeant Cotton's believing deadly force might be required under the circumstances: both made clear their belief Robbie Tolan's vehicle was

stolen; Sergeant Cotton drew his pistol upon his arriving on the scene; and Officer Edwards continually covered Robbie Tolan and Cooper with pistol drawn throughout the sequence of events. *E.g., Garner*, 471 U.S. at 11-12 (deadly force not unconstitutional when probable cause to believe crime involving threat of serious physical harm has been committed and, if feasible, suspect warned deadly force may be used).

Noteworthy here, Robbie Tolan's refusing to obey a direct order to remain prone violated Texas Penal Code § 38.15 and Texas Transportation Code § 542.501 in Sergeant Cotton's presence; those sections provide: "[a] person commits an offense" by disrupting or impeding "a peace officer . . . performing a duty or exercising authority imposed . . . by law", § 38.15(a)(1); and "[a] person may not wilfully fail or refuse to comply with a lawful order . . . of a police officer", § 542.501. Such refusal, under the circumstances, could have reinforced an officer's reasonably believing Robbie Tolan to be a non-compliant and potentially threatening suspect. Robbie Tolan could have avoided injury by remaining prone as Officer Edwards, with pistol drawn, had ordered him to do. Instead, his shouting and abruptly attempting to approach Sergeant Cotton inflamed an already tense situation; in the light of his actions at the scene, a genuine dispute of material fact does not exist regarding whether Sergeant Cotton acted objectively unreasonably. *E.g., Deville*, 567 F.3d at 167; *Ontiveros*, 564 F.3d 379; *Young*, 775 F.2d 1349.

It goes without saying that this occurrence was tragic. But, the Officers' mistake of fact and Robbie Tolan's injury do not permit deviating from controlling law. Accordingly, and because Robbie Tolan has not shown a genuine dispute of material fact for whether Sergeant Cotton's shooting him was objectively unreasonable under clearly-established law, summary judgment based on qualified immunity was proper.

No. 12-20296

### B.

Marian Tolan contends the summary judgment for Sergeant Cotton was improper because a genuine dispute of material fact exists for whether her right to freedom from excessive force was violated by Sergeant Cotton's grabbing her arm and shoving her against the garage door. Viewing the summary judgment record in the light most favorable to her, Marian Tolan has not created a genuine issue of material fact on whether Sergeant Cotton's conduct was objectively unreasonable in the light of clearly-established law.

### 1.

For the reasons stated above, and because the undisputed, material facts show Sergeant Cotton is entitled to qualified immunity under the second prong of the qualified-immunity analysis, we need not decide the first prong.

### 2.

Officers have a clearly-established right to use "measured and ascending" responses to control volatile situations while in the discharge of their official duties. *Poole*, 691 F.3d at 629 (internal citation and quotation marks omitted). Marian Tolan likewise violated Texas Penal Code § 38.15 and Texas Transportation Code § 542.501 by refusing to remain calm and move to the garage door as Sergeant Cotton ordered, thereby, as provided in § 38.15, impeding his performing a duty imposed by law and, as provided in § 542.501, "refus[ing] to comply with [his] lawful order".

There is no genuine dispute of material fact that this is what happened. Sergeant Cotton first used voice commands in an attempt to gain Marian Tolan's compliance and to facilitate his securing and searching two felony suspects. *E.g.*, *Deville*, 567 F.3d at 167-68 (officers should attempt voice commands before resorting to physical force when circumstances permit). Those commands having proved ineffectual, Sergeant Cotton used minimal physical force to move Marian Tolan away from Officer Edwards' line of sight in an attempt to restore

order to a chaotic and confusing scene and to conduct the necessary investigation.

Accordingly, Sergeant Cotton's actions were not objectively unreasonable in the light of clearly-established law. Summary judgment based on qualified immunity was proper regarding Marian Tolan.

### III.

For the foregoing reasons, the Rule 54(b) judgment in favor of Sergeant Cotton is AFFIRMED.