UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT R TOLAN, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:09-CV-1324 |
| § | |
| JEFFREY WAYNE COTTON, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER ON DEFENDANT CITY OF BELLAIRE'S MOTION FOR SUMMARY JUDGMENT

The City of Bellaire, Texas has moved for summary judgment of the federal and state law claims brought by Plaintiffs Robert R. Tolan, ("Robbie Tolan") Marian Tolan, (" Mrs. Tolan") Bobby Tolan ("Mr. Tolan"), and Anthony Cooper, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the basis that there is no genuine issue of material fact that the City deprived Robbie Tolan of a federally protected right, that all claims of Plaintiffs under Texas law are barred by the City's governmental immunity, and the City is entitled to judgment as a matter of law.

The Court will not burden the record with a recital of the procedural history of this case. A rendition of that history can be found in the City's motion for summary judgement (Doc. 158), the Plaintiffs' response to that motion (Doc 199) and this court's previous summary judgment order (Doc. 83).

**Robbie Tolan versus the City of Bellaire**

Title 42, United States Code §1983 provides a private cause of action against those who, under color of state law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws" 42 U.S.C §1983.  The only remaining federal,

§ 1983, cause of action against the City is that of Plaintiff Robbie Tolan.

Municipalities and other bodies of local government are "persons" within the meaning of § 1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  Generally municipalities or local government units are not liable for the constitutional torts of their employees unless those employees act pursuant to an official action or with approval.  *Monell*, 436 U.S. at 663 n.7.  "A municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.* at 691.  "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.'" to establish liability.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578-580 (5th Cir. 200l).

In order to prove his case against the City, Robbie Tolan must identify evidence which shows, first, that an unconstitutional City policy of failure to train police against the use of excessive force existed; second, there was an actual connection between the identified unconstitutional City policy and the City's "policymaker;" and third, Robbie Tolan was subjected to the use of excessive force by a City of Bellaire Police Lieutenant Jeffrey Wayne Cotton ("Defendant Cotton"), because of the execution of the particular City policy identified.  *Connick v. Thompson,* __U.S.__ 131 S.Ct. 1350, 1359 (2011); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.) (en banc), cert denied, 472 U.S. 10116 (1985).  The City is entitled to insist upon specific identification of the City policy through which the Plaintiff seeks to establish liability.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578-580 (5th Cir. 2001).

Robbie Tolan maintains that the City of Houston failed to adequately train Defendant Cotton in the use of deadly force.  The Constitution provides protections from a municipality's causing a constitutional deprivation.  It does not require, however, that the municipality prevent

in every case a law enforcement officer from using excessive force. See *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002). To establish his claim Robbie Tolan must identify evidence that shows not only that an unconstitutional decision was made, but that the City itself made the unconstitutional decision. *See Gonzalez v. City of Ysleta Independent School District*, 996 F.2d 745, 759 (5th Cir. 1993).

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action [here, training on the use of deadly force] has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 407 (1997), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[P]roof of an inadequate policy, without more, is insufficient to meet the threshold requirements of § 1983," *Gonzalez*, 996 F.2d, at 757. "[M]unicipal liability must be predicated upon a showing of 'fault,' not merely 'responsibility." *Id*. "[D]eliberate indifference" is a stringent standard of fault, requiring proof that a [governmental] actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. Mere negligence is insufficient to establish a constitutional deprivation. *Daniels v. Williams,* 474 U.S. 327, 328 (1986); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

Only when a city's failure to train an officer actually causes an injury it may, in certain very limited circumstances, be considered a policy for which a municipality may be held responsible. *Canton*, 489 U.S. at 390. The basis for liability against a city under such circumstances depends upon the degree of fault evidenced by the government's action or inaction. *Brown v. Bryan County*, 219 F.3d 450, 459 (5th Cir. 2000). "To prevail on a failure to

train theory a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy and (3) that the inadequate training policy directly caused the violations in question." *Gonzalez,* 996 F.2d at 757.

The Court takes judicial notice of the fact that Texas statutes provide that all peace officers in Texas, including Defendant Cotton and the other the peace officers of the City of Bellaire are required to complete training and licensing requirements of the Texas Commission on Law Enforcement ("TCOLE") before serving as a police officer. *See* Texas Occupations Code §§ 2701.251, 1701.253.

Under § 1701.251 of the Texas Occupations Code, TCOLE is required to establish and maintain training programs for peace officers. In order to obtain and maintain a peace officer license in Texas, each officer must satisfactorily meet TCOLE standards. Through §1702.253 of the Texas Occupation Code, the Texas Legislature has mandated that TCOLE establish a statewide comprehensive education and training program on civil rights which covers the laws of the state of Texas and of the United States pertaining to peace officers for all licensed law enforcement officers in Texas. All law enforcement officers in Texas receive that training that has been deemed adequate by the State of Texas to prepare officers to competently perform the duties of their office.

The licensing and training standards established by TCOLE have been found to comply with constitutional requirements and are adequate to enable Texas peace officers to deal with unusual and recurring situations peace officers encounter. *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

The summary judgment evidence presented by the City demonstrates that the City's

officers received TCOLE training, and that training was adequate. Docs. 158-1 through 158-20. (exhibits numbered 36-55). Documents numbered 158-1 and 158-2 (exhibits numbered 36-37), 158-7 and 158-8 (exhibits numbered 42-43), specifically detail the training Defendant Cotton received.

Robbie Tolan responds to the City's arguments on the adequacy of existing training procedures with a single witness, his retained expert, Dr. William T. Gaut.

> Dr. Gaut opines in his affidavit that the police department's General Order GEN-100 (titled "Use of Force") was constitutionally deficient because it failed to explain when an officer should use non-deadly force (such as a Taser) instead of deadly force (such as a service weapon). Instead, it permitted an officer to "use an unauthorized weapon if exigent conditions leave the officer no other reasonable alternative to protect himself or others," without explaining what such an "exigent condition" is, or how an officer should be expected to determine what the "reasonable alternatives" are.

Doc. 199, at 20, quoting Doc. 199-5 (Exhibit E) at 17. Because "the City's policy effectively leaves this determination to the subjective prerogative of each individual officer, which is the equivalent of not having any policy at all." *Id.*

For the deliberate indifference prong for failure to train, Dr. Gaut's opinion is that from his review of the documents produced by the City he found they did not reflect that the City's police officers received any training regarding when and how to utilize de-escalation techniques, such as verbal warnings. *Id*., at 20-21, citing 199-5 (Exhibit E), at 18.

> It is especially appropriate during the investigation of property crimes (where there has been no evidence of force or threat of life) and in instances where suspects are reasonably compliant that verbal warnings and de-escalations techniques be undertaken instead of deadly force. Here, the evidence shows that the Tolan family, who we now know were completely innocent of any wrongdoing, was basically compliant to the officers' directions. Thus, verbal commands from the officers would have been the appropriate reaction in all such circumstances.

*Id.*

Dr. Gaut concluded that "the need to train officers on the specific circumstances when deadly force is not appropriate is so obvious that the City's abject failure to do so constitutes deliberate indifference to the safety of the public." *Id.* Dr. Gaut's opinions are not supported by the Supreme Court and Fifth Circuit law.

In *City of Canton* the United States Supreme Court held

> Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under §1983.
>
> *Monell's* rule that a city is not liable under §1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. . . .
>
> Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. . . . Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect. . . .
>
> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to

> point to something the city "could have done" to prevent the unfortunate incident. . . .Thus permitting cases against cities for their "failure to train" employees to go forward under §1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities—a result we rejected. . . .It would also engage the federal courts in an endless exercise of second-guessing municipal employee training programs.

*City of Canton*, 489 U. S. at 389-392. [internal citations omitted]

The facts and circumstances of the instant case do not establish that a failure to train police officers specifically on "utilizing de-escalation techniques, including proper verbal warnings and communications" (199 E, at 17-18) and on when excessive force should not be used, the mirror image of the training on when excessive force may be used, makes the training received by City of Bellaire police officers so inadequate that it would be obvious to the City that, without providing that training, the City is rendered deliberately indifferent to the civil rights of the populace.

In *Snyder v. Trepagnier, et al.*, 142 F. 3d 791, 799 (5th Cir. 1998), the Honorable Jerry Smith held, "[W]e have emphasized that, when seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely the opinion of an expert witness." Judge Smith quoted from *Stokes v. Bullins*, 844 F2d 269, 275 (5th Cir. 1988): "[A]n expert's opinion should not be alone sufficient to establish constitutional 'fault,' by a municipality in a case of alleged omissions, where no facts support the inference that the town's motives were contrary to constitutional standards." The opinion evidence of William Gaut is the only evidence Robbie Tolan has on the issue of failure to train. Because the City's officers were provided substantial relevant training, neither the "unmistakable culpability" nor the "clearly connected" causation requirements established by *Brown,* 219 F3d, at 461, can be shown in this case. *See Roberts*, 397 F.3d at 296. The City's policy maker has not been shown to be deliberately

indifferent to a known need for training.

The Fifth Circuit held in *Thompson v. Upshur County*, 245 F.3d 447, 459-60 (5th Cir. 2001, that Fifth Circuit precedent makes clear that deliberate indifference on the part of a governmental policymaker cannot generally be shown from a single violation of constitutional rights or expert testimony. In *Valle v. City of Houston*, 613 F3d 536, 542 (5th Cir. 2010), the Fifth Circuit described the exception to municipal liability for a single incident as "extremely narrow." In *Roberts*, 397 F.3d at 295, the Fifth Circuit held, "This circuit, in conformity with Supreme Court jurisprudence has been highly reluctant to permit this exception to swallow the rule that forbids mere *respondeat superior* liability." The Fifth Circuit has "consistently rejected application of the single incident exception." *Gabriel v. City of Plano* 202 F.3d 741, 745 (5th Cir. 2000); *Conner v. Travis County*, 209 F.3d 794, 797 (5th Cir. 2000).

Defendant's brief correctly points out

> In 30 years the **only** case in which the Fifth Circuit Court upheld a finding of municipal liability based upon a single incident exception—a case **not involving** alleged merely *inadequate* training but absolutely *no training at all*—the court found a sheriff "had full notice of the full extent of [Deputy] Burns's exuberant and reckless background" and "his record of on-the-job conduct" which included force against "a number of arrest subjects," but the sheriff nonetheless provided Burns with **no training at all**.

Doc. 158, at 24-25, quoting *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000) (emphasis in the brief).

The Court does not address the "policymaker" issue because it is unnecessary to the decision on this motion.

The Court does not address the "failure to supervise" issue because, with the exception of Dr. Gaut's mentioning in his affidavit that Defendant Cotton was a "supervisor" at the time of

the incident, and "should have prevented Edwards from engaging Tolan and Cooper in the first place, and should have exhibited the advanced skills that would be expected of a supervisor, specifically to show that the department's training concepts were being properly exercised in the field." 199 Ex D at 31-32.  In addition to having a faulty view of the evidence of Defendant Cotton's "supervision" of Officer Edwards, Dr. Gaut fails to point to any evidence that the City of Bellaire was responsible for the incident because of Cotton's alleged failure to supervise.  As the Supreme Court found in *City of Canton*:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability of the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . .It may be for example that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.

*City of Canton*, 489 U.S. at 390-391 [internal citations omitted]

Dr. Gaut's comment on Defendant Cotton's supposed supervisory role is not evidence of the City's failure to supervise or failure to train.

The Court will not address in this opinion the discrepancies between Dr. Gaut's deposition testimony and his affidavit cited in the City of Bellaire's Response, Doc. 206 at 7-8.

**Robbie Tolan versus The City of Bellaire-- Texas Tort Claims**

Robbie Tolan has Texas state law claims of negligence against the City based upon allegations that (1) the City owed him a duty to protect him from injuries; (2) the City hired, retained, and promoted Defendant Cotton; and (3) Defendant Cotton used a firearm to shoot

Robbie Tolan.

The City has filed a motion for summary judgment, citing the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code Ann. §101.021 (TTCA); *City of Kemah v. Vela*, 149 S.W. 3d 199, 204-205 (Tex. App.—Houston [14th Dist. 2005, no pet.).

The TTCA provides:

> A governmental unit in the state is liable for:
> (1) property damage, personal injury, and death proximately caused by the wrongful act or admission or the negligence of an employee acting within his scope of employment if:
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven vehicle equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by the condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code §101.021

The TTCA further states:

> This chapter does not apply to a claim:
> (1) Based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or
> (2) Arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.
> (3)

Tex. Civ. Prac. & Rem. Code §101.057

The City enjoys governmental immunity from suit unless that immunity is waived by the provisions of the TTCA.

### **State Negligence Claims**

The City argues that Robbie Tolan's first two claims (the City owed Robbie Tolan a duty

to protect him from injuries; the City hired, retained, and promoted Defendant Cotton), amounting to a failure to adequately supervise its employees, do not involve injury caused by any condition or use of tangible property, as required as an initial element of a potential waiver of sovereign immunity under the TTCA. *See City of Kemah v. Vela*, *supra*; *City of Sugarland v. Ballard*, 174 S.W.3d 259, 266-68 (Tex. App. –Houston [1st Dist.] 2005, no pet.); *Texas A&M University v. Bishop*, 156 S.W. 3d. 580, 581 (Tex. 2005). The TTCA does not waive immunity where the actual claim asserted is for improper supervision of a person as opposed to personal injury caused by property. *Id*.

Robbie Tolan's arguments to the contrary are without merit. First he argues that "the Texas Supreme Court's opinion in *Texas Department of Criminal Justice v. Campos* suggests that a plaintiff may allege a cause of action for negligent supervision or training arising under the Texas Tort Claims Act *if* the negligence involves "tangible personal property." Doc. 199 at 36, citing 384 S.W. 3d 810, 815 (Tex. 2012). The *Campos* decision does not suggest anything of the kind. On page 815 of the opinion the Texas Supreme Court holds, "[E]ven if a claim is based on an intentional tort, a governmental entity may still be liable for negligence if that negligence is distinct from the intentional tort. *Young v. Dimmitt*, 787 S.W.2d 50, 51 (Tex. 1990). . . . But a cause of action for negligent supervision or training must satisfy TTCA's use of tangile property requirement." *Campos*, 384 S.W.3d at 815, citing *Texas Department of Public Safety v. Petta*, 44 S.W. 3d 575, 581 (Tex. 2001). The Supreme Court found in *Petta* that "immunity was not waived for claims that the Department negligently failed to furnish proper training and instruction to the trooper because information, even if written down, is not tangible property but is only an abstract concept." *Petta*, 44 SW3d at 580-81.

In the *Campos* case the plaintiffs argued that certain employees of the Texas Department

11 / 16

of Criminal Justice—Community Justice Assistance Division had utilized property of the state, i.e., a laundry cart, to block entrance to the laundry room door, when they performed sexual assaults on the plaintiffs. "The Plaintiffs' allege. . . that TDCJ failed to discipline prior inappropriate conduct by other employees, failed to properly hire, train, and supervise Allen and Hayes, and failed to screen, educate, train, supervise, investigate or otherwise direct employees with regard to sexual harassment and assault." The *Campos* plaintiffs did not, however, "allege that a 'use' of tangible property was involved in any of these failures." *Campos*, 384 S.W. 3d at 815, citing *Petta,* 44 S.W. 3d at 580-81, which had concluded that claims related to negligent failure to train, instruct, and discipline involved the misuse or non-use of information which is not tangible property, and the TTCA would not serve to waive the governmental entity's immunity from those claims. *Campos*, 384 S.W.3d at 815.

Plaintiff also cites an unpublished Fifth Circuit opinion, *Lopez-Rodriguez v. City of Levelland,* 100 Fed. Appx. 272, 275 (5th Cir. 2004), for the proposition that a firearm can be considered tangible personal property. In that case the Fifth Circuit reversed a summary judgement in favor of the City of Levelland, Texas on a TTCA negligence claim. The city policeman submitted an affidavit that "the fatal gunshot was fired accidentally into Rodriguez's car window and that he and Officer Wooten did not intend to injure Rodriguez." *Id*. The *per curium* opinion found, "Under Texas law, there is no impediment to a proper characterization of negligence when the facts may show that officers in the course and scope of their duty improperly or negligently used tangible personal property and caused an injury or death." *Id*. The facts of the *Lopez-Rodriguez* case are quite different and distinguishable from the instant case, as is discussed below.

**Intentional Tort Immunity Under TTCA**

Robbie Tolan's third claim is one of assault, an "intentional tort." The TTCA excludes from waiver of governmental immunity claims against the City for the intentional torts of its employees. Tex.Civ. Prac. & Rem Code Ann. §101.057(2); *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994); *Downey v. Denton County*, 119 F3d. 381, 387 (5th Cir. 1997); *City of San Antonio v. Dunn*, 796 S.W. 2d 258, 261 (Tex. App.—San Antonio 1990, writ denied). "There is, properly speaking, no such thing as a negligent assault." *City of Waco v. Williams*, 209 S.W. 3d 216, 224 (Tex. App.—Waco 2006, no writ).

Robbie Tolan cannot use artful pleading to circumvent the requirements of the TTCA by mischaracterizing his claim as one that sounds in negligence. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W. 2d 339, 343 (Tex. 1998); *Dallas Area Rapid Transit v. Whitley*, 104 S.W. 3d 540, 543 (Tex. 2003); *Cameron County v. Ortega*, 291 S.W. 3d 495, 498-99 (Tex. App.—Corpus Christi 2009, no pet.); *Morgan v. City of Alvin*, 175 S.W.3d 408, 419 (Tex. App.—Houston[1st Dist.] 2004, no pet.).

In response to this line of cases, Plaintiff cites the Honorable Sim Lake's opinion in *Khansari v. City of Houston,* 14 F.Supp.3d 842 (S.D.Tex.2014), which held: "A claim properly stated as an intentional tort may not be restated as a claim for negligence [citing *Lopez-Rodriguez,* 100 Fed. Appx. 285]. However, the conduct underlying intentional torts may be a basis for proper claims of negligence." *Khansari,* 14 F. Supp. at 872, citing *Whittington v. City of Cuero,Texas*, 2007 WL 951864,*12 (S.D. Tex. March 28, 2007).

In *Whittington* the Honorable John Rainey dismissed, pursuant to Rule 12(b) (6), the plaintiff's intentional tort claims for intentional misconduct and intentional infliction of emotional distress, but classified a taser as "tangible personal property" and retained the claims

that the taser had been negligently used by the police officers, stating "If Officer McCarthy's conduct is later found to be solely intentional and not negligent, this claim will properly be dismissed." *Id.*, also citing *Lopez-Rodriguez*, *supra.*

*Khansari* also involved an allegation of negligent use of a taser. Relying on *Lopez-Rodriguez* and *City of Lubbock v. Nunez*, 279 S.W. 3d 739, 742 (Tex.App—Amarillo 2007, pet. dismissed), which also involved claimed negligent use of a taser, Judge Lake concluded that "the plaintiffs' allegations that the defendant officers injured Corey by firing their tasers at him negligently should not be dismissed at this stage of the lawsuit." *Khansari*, 14 F. Supp. 3d at 873. In *City of Lubbock* the Amarillo appellate court found, "we cannot infer Doherty's intent to cause injury from his use of a taser, which appellees allege is advertised to be a 'non-lethal' or 'safe' incapacitation device." 280 S.W.3d at 743.

An inference to cause injury from Defendant Cotton's use of his firearm is obvious, but there is no need to rely on inferences. In an interlocutory appeal handed down to resolve the conflicts between the Fort Worth Court of Appeals decision and prior decisions by other courts of appeals on the issue of use of tangible property during an arrest, the Supreme Court of Texas, in *City of Watauga v. Gordon*, 434 S.W.3d 586 (Tex. 2014), first addressed its opinion in *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985). In *Reed Tool*, a workers compensation case, the Supreme Court of Texas had held that there was a "fundamental difference" between negligent injury and intentional injury, and that difference is the "specific intent to inflict injury." *Id*. *Gordon* found the distinction drawn in *Reed Tool* "is not particularly helpful in distinguishing a battery from negligence" in interpreting the TTCA. *Gordon*, 434 S.W.3d at 592. After rejecting the *Reed Tool* distinction, upon which *Lopez-Rodriguez, City of Lubbock, Whittington* and *Khansari,* rely, *Gordon* specifically addresses the reasoning of *City of Lubbock*:

14 / 16

> The court of appeals in this case is not the first Texas court to conclude that allegations of unintended injury during an arrest state a negligence claim. See, e.g., *City of Lubbock v. Nunez*, 279 S.W. 3d 739, 742-43 (Tex. App.—Amarillo 2007, pet. granted & dismissed by agr.) (concluding that the death of an uncooperative suspect caused by a police officer's repeated use of a taser was unintentional and consequently the result of negligence). But again, we agree with [*District of Columbia v.*] *Chinn* [839 A.2d 701, 707 (D.C. 2003)] that such a conclusion is "doctrinally unsound." *Chinn*, 839 A.2d at 707. The actions of a police officer in making an arrest necessarily involve a battery, although the conduct may not be actionable because of privilege. . . .The officer is privileged to use reasonable force. [*Tex. Dep't of Pub. Safety v.*] *Petta*, 44 S.W.3d [575] at 579 (Tex.2001). But a police officer's mistaken or accidental use of more force than reasonably necessary to make an arrest still "arises out of" the battery claim. [*City of San Antonio v.*] *Dunn*, [796 S.W. 2d 258], at 261 (Tex. App.-- San Antonio, 1990). "As the saying goes, there is no such thing as a negligent battery, since battery is defined to require an intentional touching without consent, not a negligent one." 1 THE LAW OF TORTS § 31 AT 77."

*Gordon*, 434 S.W. 3d at 593-94.

The TTCA does not waive governmental immunity when the claim arises out of an intentional tort. There can be no doubt after *City of Watauga v. Gordon* that, in Texas, use of excessive force by a police officer is an intentional tort, and "to be viable, the claim cannot arise out of an intentional tort." *Gordon*, 434 S.W.3d at 589.

Robbie Tolan's state tort claims against the City of Bellaire, Texas must be dismissed.

**Bobby Tolan's, Marian Tolan, and Anthony Cooper's Texas Tort Claims versus the City of Bellaire**

Mr. and Mrs. Tolan, Robbie Tolans's parents, and Anthony Cooper, his first cousin who lived with Robbie Tolan in the house of Mr. and Mrs. Tolan, witnessed the shooting of Robbie Tolan by Defendant Cotton. They have each brought a bystander claim for damages.

"[G]overnmental immunity to suit is only waived and abolished to the extent of liability created by the Tort Claims Act. Tex.Civ.Prac&Rem.Code §101.025." *Barker v. City of Galveston*, 907 S.W. 2d 879 (Tex. App.—Houston [1st Dist.] 1995, no writ. "[G]overnmental

immunity is not waived for the purposes of a bystander claim." *Id*.

In *Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993), the Supreme Court of Texas held: "Before a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim."

Inasmuch as the Court has determined that Robbie Tolan's injuries were not caused by the negligence of Defendant Cotton, the City is immune from the bystander claims of Bobby Tolan, Marian Tolan, and Anthony Cooper.

Accordingly, it is hereby

ORDERED that Motion for Summary Judgment in favor of the City of Bellaire on Robbie Tolan's claim for § 1983 excessive use of force, his Texas Tort Claims Act negligence claims, and Bobby Tolan's, Marian Tolan's, and Anthony Cooper's bystander claims under the Texas Tort Claims Act is GRANTED.

SIGNED at Houston, Texas, this 11th day of September, 2015.

                                              MELINDA HARMON
                                           UNITED STATES DISTRICT JUDGE