1          UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF TEXAS
2                 HOUSTON DIVISION

3  ROBERT R. TOLAN, BOBBY TOLAN,  .  4:09-CV-01324
   MARIAN TOLAN AND ANTHONY       .  HOUSTON, TEXAS
4  COOPER,                        .  SEPTEMBER 11, 2015
                                  .  1:30 P.M.
5        PLAINTIFFS,              .
   VS.                            .
6                                 .
   JEFFREY WAYNE COTTON AND       .
7  THE CITY OF BELLAIRE, TEXAS,   .
8        DEFENDANTS.              .
   ...............................
9

10              TRANSCRIPT OF DOCKET CALL
          BEFORE THE HONORABLE MELINDA HARMON
11            UNITED STATES DISTRICT JUDGE

12

13 <u>APPEARANCES</u>:

14

   FOR THE PLAINTIFFS:
15
        Aubrey Pittman
16      THE PITTMAN LAW FIRM PC
        100 Crescent Court
17      Suite 700
        Dallas, Texas  75201
18

19      Daryl Kevin Washington
        THE LAW OFFICE OF DARYL K. WASHINGTON
20      325 North Saint Paul Street
        Suite 1975
21      Dallas, Texas  75201

22
        Matthew J. Kita
23      Attorney at Law
        Post Office Box 5119
24      Dallas, Texas  75208

25

1                   APPEARANCES - CONTINUED

2

3    ALSO FOR THE PLAINTIFFS:

4         Benjamin L. Crump
          PARKS CRUMP LLC
5         240 Magnolia Drive
          Tallahassee, Florida  32301

6

7    FOR THE DEFENDANTS:

8         William S. Helfand
          Norman R. Giles
9         CHAMBERLAIN HRDLICKA
          1200 Smith Street
10        Fourteenth Floor
          Houston, Texas  77002
11
     OFFICIAL COURT REPORTER:
12
          Mayra Malone, CSR, RMR, CRR
13        U.S. Courthouse
          515 Rusk
14        Room 8004
          Houston, Texas  77002
15        713-250-5787

16

17   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
18

19

20

21

22

23

24

25

***PROCEEDINGS***

13:29 1

2      THE COURT:  This afternoon we are here for the docket

3  call in this one case on the docket call today.  And that is

4  Robert R. Tolan, et al, versus Jeffrey Cotton and City of

13:38 5  Bellaire.

6           Can I have your appearances, please?

7      MR. PITTMAN:  Your Honor, on behalf of the plaintiffs,

8  I'm Aubrey "Nick" Pittman, along with Benjamin Crump, Darryl

9  Washington and Matthew Kita.

13:38 10      MR. HELFAND:  Good afternoon, Your Honor.  William

11  Helfand and Norman Giles for the defendant.

12      THE COURT:  There are a few things I wanted to talk to

13  you all about.  First of all, I have managed to complete the

14  motion for summary judgment filed by the City, and it will be

13:38 15  on the electronic docket this afternoon.

16           I have essentially granted -- I have granted all

17  of the Defendant City of Bellaire's motions.  And I have

18  written a 16-page opinion.  So that's that.  So the City of

19  Bellaire is out of the case.

13:39 20           I have not -- I have not done anything more than

21  read over several times the motion for summary judgment of

22  Lieutenant Cotton and the responses and the replies and

23  everything else.  I have read them all over and I will tell

24  you, you know, I'm very tempted to grant it, but I'm not going

13:39 25  to grant it because I just -- if I could just be candid, I

13:39 1  think the Supreme Court sent it back to the Fifth Circuit so

2  that they could reanalyze my case.  The Fifth Circuit didn't

3  want to do that so they punted it to me, and I don't think

4  there is any way they would ever be satisfied if I did not --

13:40 5  we didn't take this case to trial.  It is like Justice Souter

6  said, this case needs to go to trial, so we will go to trial on

7  that.  So that means that your motions -- one of your motions

8  for failure to state a claim denied one of them moot.

9         Now, that leaves a motion for separate trial,

13:40 10  which is now moot, and there is also an opposed motion to

11  exclude the expert which somehow did not get referred to Judge

12  Stacy.  And it was just an oversight, I think, unless you all

13  have withdrawn that.

14         MR. HELFAND:  Judge, you have two objections to Judge

13:40 15  Stacy's order on expert witnesses.

16         THE COURT:  I thought she had ruled on all of them

17  except for Stan Smith.

18         MR. HELFAND:  She did, Judge.  But with all due

19  respect to the magistrate judge, she erred grossly as to the

13:41 20  two of them.

21         THE COURT:  I'm going to get to that one.  All right?

22         MR. HELFAND:  I think otherwise all of the ones we

23  originally presented to the Court were properly referred to the

24  magistrate, and she did --

13:41 25         THE COURT:  Except for Stan Smith.

13:41 1          MR. PITTMAN:  She did not issue a ruling as to Stan

2   Smith, Your Honor.

3          THE COURT:  I'm looking at her motion.  She overruled

4   your motion to exclude the baseball expert, if I can use that

13:41 5   term, because there was no report or statement of what they

6   were going to testify to.  She overruled that and you all have

7   filed an objection to that.

8              Is there an objection to any other one of her

9   rulings?  Because if there is, I'm not aware of it.

13:41 10         MR. HELFAND:  Yes, Your Honor.  The magistrate judge

11  overruled the objections to Mr. William Gaut, G-A-U-T, as an

12  expert witness, and we have filed an objection.

13         THE COURT:  Okay.  I'm sorry.  I just overlooked that.

14  That's why I'm doing this now, because I want to be sure that

13:42 15  we get all the motions taken care of before we try to pick a

16  jury.

17         MR. HELFAND:  I fully understand, Your Honor.  I can

18  find that docket entry reference for you, but it is noted as a

19  pending motion in the joint pretrial order.

13:42 20         THE COURT:  All right.  I will find it.

21         MR. PITTMAN:  For the record, we have opposed it.  We

22  conferred with them.  It was just filed two or three days ago.

23  We plan to file a response, unless Your Honor is going to rule

24  on it based on the magistrate's prior ruling.

13:42 25         THE COURT:  Which one are you talking about?  Gaut or

13:42 1 the baseball guys?

2      MR. PITTMAN:  All of it.  They filed an opposition or

3 objection to both rulings --

4      THE COURT:  Right.

13:42 5      MR. PITTMAN:  -- for Dr. Gaut, as well as the baseball

6 expert.  We have already responded to their objections as to

7 the baseball experts, their objections to the magistrate's

8 ruling.  Now they just recently filed objections to the

9 magistrate's rulings as to Dr. Gaut.  We have not had an

13:43 10 opportunity to file a response, but if Your Honor is willing to

11 deny their motion based on the magistrate's ruling, then we

12 won't file a response.  Otherwise, we plan --

13      THE COURT:  No.  Go ahead and file a response.  I want

14 to see that.  Okay?

13:43 15      So we have got those two hanging out there.

16      MR. PITTMAN:  Yes, Your Honor.

17      THE COURT:  And I think that's it.  Right?  The

18 objections to the experts, Gaut and the baseball men?

19      MR. PITTMAN:  Your Honor, there is also -- we filed

13:43 20 objections to their summary judgment evidence, so we would like

21 a ruling on our objections to the City's summary judgment

22 evidence.  We also --

23      THE COURT:  Oh, yes.  I'm overruling your objection to

24 that.

13:43 25      MR. PITTMAN:  Thank you.

13:43   1       MR. HELFAND:  Another thing, Judge, as far as the

        2    defendants go, that's all the pending motions.

        3       THE COURT:  I think that's all of them.  Also, of

        4    course, we have the motions in limine.  And I have looked over

13:44   5    those too, and, you know, most of them look pretty good on both

        6    sides, but I'm sure you all are going to have a fight about

        7    them, but that is just the name of the game here.

        8       What I would like to do is let you all, if you

        9    could possibly do it, put your heads together and see if you

13:44  10    can agree on the bulk of them.  And if there are some extras

       11    left over before we start picking the jury, I can rule on

       12    those.

       13       Is that possible, do you think?

       14       MR. PITTMAN:  Anything is possible.

13:44  15       THE COURT:  Okay.  Give it a whirl.

       16       MR. PITTMAN:  I think there are some of them that will

       17    go away based on the Court's ruling, but there are others where

       18    I don't know that we will be able to agree.

       19       THE COURT:  I'm not trying to force you.  I just want

13:45  20    to take a load off of my back if you can all agree to some of

       21    this.

       22       MR. HELFAND:  That's where I'm coming from, Judge.

       23    We, like you, have been working very hard.  Given a little bit

       24    of time, we will pare it down to what we think needs the

13:45  25    Court's attention.

13:45   1          THE COURT:  All right.  Now, I'm assuming that you all

        2   are ready for trial, and I understand there is a problem with

        3   starting on Monday, but we could start on Tuesday to pick the

        4   jury.  And that's what I'm planning on doing.

13:45   5          Let me hear what your thoughts about that are.

        6          MR. CRUMP:  Your Honor, we have witnesses that have

        7   issues on Wednesday and Thursday, so if we were not going to

        8   start on Monday, plaintiffs would respectfully request that we

        9   just start the following week.  We think this trial could be

13:45  10   done in five days, especially in light of your ruling.

       11          THE COURT:  Next week?  What do you say about that?

       12          MR. HELFAND:  The problem with that, Judge, is my

       13   experts are planning to be here Thursday of next week, and some

       14   of them are people who train around the world, and so we have

13:46  15   slotted them based on the expectation the case would start

       16   trial next week.

       17          I have offered to the plaintiff that if they need

       18   to call people out of turn, even in the defendant's

       19   case-in-chief, I'm happy to do it.  But I think it would be a

13:46  20   mistake -- I apologize -- well, I can't apologize for the fact

       21   that it happens to be a very holy day.  Maybe I should

       22   apologize because my mother will not allow me to work on

       23   Monday.  But it would seem wasteful not to do Tuesday through

       24   Friday, to begin the trial in this case.  The problem is it

13:46  25   will probably preclude me from calling experts who then will

13:46　1　not be available the following week.

2　　　　THE COURT:  What is the problem on Wednesday and

3　Thursday?  You don't have any witnesses you could call on

4　Wednesday and Thursday?

13:46　5　　　　MR. CRUMP:  We have a similar issue to counsel.  Our

6　experts can come the following week, but they are in other

7　cases in federal court around the country.  We too have experts

8　that are national experts that have other commitments.  And so

9　if his experts can come on Thursday and Friday of next week, we

13:47　10　think we can be ready to give him his case on Thursday and

11　Friday, so he can call his experts and can accommodate our

12　experts, Your Honor.

13　　　　THE COURT:  So you are willing to take your people out

14　of turn and start on Tuesday?

13:47　15　　　　MR. CRUMP:  We were asking the 21st, the week

16　afterwards, if we could do that.  And we think we can have all

17　our experts done by Wednesday and if he needs to take his

18　experts out of turn on Thursday and Friday, that's the week of

19　the 21st through the 26th, then we will certainly be amenable

13:47　20　to him taking it out of turn.  We are trying to accommodate his

21　schedule request on Monday.  We hope that he would accommodate

22　us on going the following week, if that --

23　　　　THE COURT:  I want to be sure I get the dates right

24　because I get confused.  Numbers confuse me.

13:48　25　　　　You want to start on the 21st, Monday the 21st,

13:48    1    and put your case on.  And then if Mr. Helfand's experts show

         2    up on Thursday, you are happy to let him take -- put those

         3    experts on, even if you haven't finished your case?

         4              MR. CRUMP:  Absolutely, Your Honor.

13:48    5              MR. HELFAND:  May I respond?

         6              THE COURT:  Will that work?

         7              MR. HELFAND:  I don't think it will work.  Let me

         8    offer why.  This is now a three- or four-day trial.  You have

         9    six people that were at the residence at the time.  And the

13:48   10    plaintiffs have two expert witnesses, subject perhaps to

        11    Daubert challenges, and the defendants have two expert

        12    witnesses.  This is not a more than one-week trial.  The

        13    problem I have is -- I'm not understanding -- I tried to

        14    understand it, and I would really like to accommodate

13:49   15    plaintiff.  The first day is going to be consumed obviously

        16    with some motions in limine and jury selection.  Right?  We

        17    have to assume that before the plaintiffs' experts could ever

        18    testify, the fact witnesses will have to testify, because the

        19    experts obviously can't offer opinions about things that

13:49   20    haven't been put before the jury.  So I'm having a hard time

        21    understanding how starting one day later changes the calculus

        22    of the plaintiffs' case.  But I do know this, if we start on

        23    the 21st, it may effectively render one or both of my experts

        24    completely incapable of being here.

13:49   25              What I have said is because the plaintiffs can

13:49   1   present their experts either in their case or in my case, I'm

        2   okay with that.  Starting earlier doesn't hurt them because

        3   their experts, if we're going to be here -- if we started on

        4   Monday, their experts couldn't testify until Wednesday or

13:49   5   Thursday anyway.  So why can't they testify Wednesday or

        6   Thursday still?  Or Friday?

        7               THE COURT:  Of this week?  I mean, of next week?

        8               MR. HELFAND:  Yes, Your Honor.

        9               MR. PITTMAN:  Your Honor, we attempted to reach an

13:50  10   agreement.  We told them we would be willing to accommodate --

       11   initially we were told that their experts were available next

       12   week because they were planning on coming next week because

       13   they thought we would have a week of trial.  Now all of a

       14   sudden they are not available next week when they represented

13:50  15   that they were.

       16               What we tried to do -- we are willing to

       17   streamline our case -- now with the Court's ruling, we are

       18   willing to streamline our case to ensure that their experts

       19   could be available at the time he told us this morning they

13:50  20   were.  That's next week.  If his expert can only be

       21   available on Wednesday, we will start him in on Wednesday.

       22               THE COURT:  Let's take this down to my level.  Okay?

       23   Let's talk about days.  If we start the trial on the 15th of

       24   September, pick the jury on the 15th, do the motions in limine

13:51  25   on the 15th, you are saying that you don't have anybody who you

13:51    1   could put on on the 16th?

         2          MR. PITTMAN:  We do not and we put this in the

         3   pretrial order, Your Honor.  There are several witnesses.  The

         4   experts are some of them.  There are some fact witnesses.

13:51    5          If we started on Monday, maybe some of them could

         6   have done it on Monday, so they were available on Monday to

         7   come in.  We were going to call some of them out of order, but

         8   now that we are not starting on Monday, now that pressures us

         9   to -- the witnesses are just not available.  So Thursday and

13:51   10   Friday, they are not available.  I'm sorry, Your Honor?

        11          THE COURT:  I'm not understanding you.  Help me.  You

        12   are going to call your plaintiff and his family, maybe call

        13   Officer Cotton, Officer Edwards, and those are plenty of fact

        14   witnesses to take up Wednesday and Thursday, surely.  And then

13:51   15   you would want to put your experts on, but they can't come

        16   until the next week.  Is that it?

        17          MR. PITTMAN:  There are several witnesses that are not

        18   available until the next week.

        19          THE COURT:  The next Monday?

13:52   20          MR. PITTMAN:  Yes, Your Honor.

        21          THE COURT:  The 21st?

        22          MR. PITTMAN:  Yes.  And that week we are completely

        23   open.  Again, we can accommodate them.  They told us that their

        24   experts were planning on coming next week anyway, because they

13:52   25   thought it was going to be, you know, a week trial for us and

13:52  1   then a week for them.  But if their experts are available on

2   Tuesday, if it is Wednesday, Thursday, Friday, you know, they

3   have got two experts.  Of course, we would move to exclude a

4   lot of their testimony, so I don't anticipate that they will be

13:52  5   on the stand long.  But nevertheless, if it is Tuesday, we can

6   accommodate them.  If it is Wednesday, we can accommodate their

7   experts, if it is Thursday.  But that guarantees us that all of

8   our experts will be available next week.  So there is --

9        THE COURT:  Next week is the 15th, the 14th and then

13:52  10  the next week --

11       MR. PITTMAN:  The 21st.

12       THE COURT:  Two weeks is what you're talking about?

13  That's how I get confused.

14       MR. PITTMAN:  The week of the 21st, that's the week

13:53  15  that ensures that all of our witnesses are available.  And

16  because they have represented that their experts are available,

17  that ensures that both sides can call all of their witnesses on

18  the 21st.  And, again, we are willing to accommodate their

19  experts in any way in the middle of our case.  If we need to

13:53  20  take a witness and take a break between a witness or during a

21  witness's testimony, if he represents that his experts are only

22  available on a given date, we are willing to split that.

23       THE COURT:  I would rather not do that unless we have

24  to, because I think it would be very confusing to the jury.  If

13:53  25  we stop your expert and put your expert on, it would be like

1   bleh...

2       MR. HELFAND: If I can clarify something, Judge. I

3   apologize to Mr. Pittman if I said something in a way that he

4   didn't understand. He keeps talking about this case being

13:53   5   tried over a course of two tweaks. I don't think this is a

6   two-week trial by any stretch --

7       MR. PITTMAN: I said originally when the City was in

8   it.

9       MR. HELFAND: Right. Exactly. But when the City was

13:54   10   in, I didn't think the City was going to be in it. I have

11   never thought this was a two-week trial. My experts are not

12   planning to be here on the week of the 21st. They're planning

13   to be here the week of the 14th. If we are not in trial, there

14   is no taking my experts out of turn, although I appreciate the

13:54   15   offer. And I don't think my experts -- I'm checking right now,

16   but I believe they are not available at all during the week of

17   the 21st. So what that would effectively do is preclude me

18   from calling my expert witnesses because I believed we would

19   start trial no later than Tuesday.

13:54   20       Your Honor made an excellent point. Clearly

21   there are enough witnesses who can be called in this case to

22   consume the first few days of trial. It might be helpful --

23   and obviously it's up to Your Honor -- to know who are we

24   talking about who is not available? Because maybe that person

13:54   25   won't end up testifying anyway.

13:55    1        MR. PITTMAN:  Your Honor, in addition to that, there

         2    are some rulings, some things that the parties need to

         3    consider.  I don't know if the City is planning an

         4    interlocutory appeal of Your Honor's ruling as to Cotton with

13:55    5    the summary judgment.  We would like to brief the issue to the

         6    Court as to whether we should -- the Court will allow us to

         7    submit certain questions to the jury since it is going to get

         8    appealed anyway and then the Court can JNOV that, but just to

         9    avoid, you know, if it goes up and comes back down, a retrial

13:55   10    as to the City.  And then we have also got to file responses to

        11    their objections to Gaut.  We have been working on all the

        12    pretrial stuff so we have not had an opportunity to look at

        13    that, so we would like to have an opportunity to do that, as

        14    well.

13:56   15        Your Honor, going back to their point, I don't

        16    know how they anticipated that our case would be done on

        17    Wednesday of next week for them to have their experts on.  It

        18    just wouldn't have happened.  With or without the City, it

        19    wouldn't have happened, so I don't know if he had some sort of

13:56   20    premonition that City wouldn't be in.  But we represented to

        21    the Court in a joint pretrial order that they signed that this

        22    was going to be an eight-day trial.  Again, that was based on

        23    the assumption that the City was also in it.  We have aligned

        24    our witnesses pursuant to that.

13:56   25        Again, it was our understanding from what they

13:56    1  have indicated that they thought it was going to be an

2  eight-day trial, which meant that they couldn't get their

3  witnesses on until the following week anyway.  Now, again, all

4  of a sudden -- and we have tried to be courteous with them,

13:56    5  Your Honor.  I'm not saying they're discourteous, but I'm

6  saying that we are willing to work with their experts.  I don't

7  know what their expert -- I don't know if he is in trial.  We

8  have experts who are in trial and we have other experts who

9  are -- we have some baseball experts who are still playing.

13:57   10  They have indicated that they want to come testify, but there

11  are only specific days; otherwise, they are playing games all

12  over the country.  We have got some other fact witnesses who,

13  again, would have been available on Monday because we had

14  planned to call them out of turn, but now, you know, we have

13:57   15  got to try to figure out if they are available.

16          Your Honor, again, with all due respect to their

17  argument, we will work with their expert to get him in.  Unless

18  he represents that his expert is not available any day on the

19  week of the 21st, we could work with their expert to fit him

13:57   20  in.

21          MR. HELFAND:  Judge, may I respond?

22          THE COURT:  Surely.

23          MR. HELFAND:  Again, of course, it is up to Your

24  Honor, but it sounds like the experts that aren't available are

13:57   25  gentlemen who play baseball and perhaps that whole issue is

13:57  1  resolved when the Court resolves the question of whether they

2  are experts at all.  I didn't have a premonition -- let me say

3  this:  Mr. Pittman is most kind, so I don't quarrel with his

4  suggestions -- they are courteous -- but what he can't do is

13:58  5  make people available who are not available for my case.  And

6  that will happen if we start this trial a week later.

7  Your Honor, I suggest Your Honor ask who are the

8  witnesses.  If the witnesses are just baseball players, those

9  are damage witnesses that could come at the very end of the

13:58  10  case, if they are allowed to testify at all.

11  Then the suggestion is being made that there

12  maybe needs to be more briefing.  There is no more briefing

13  that needs to be done to precede this trial.  This is the time

14  to try this case.  I don't know what else to say.

13:58  15  Can I just have one second, Your Honor?

16  *(Pause)*

17  MR. HELFAND:  Judge, my experts can be available.  If

18  Your Honor prefers to start the week of the 21st, that would

19  work fine with me, with one caveat, Judge, September 22 is Yom

13:59  20  Kippur.

21  THE COURT:  I'm very well aware of that.  Listen, I

22  have been doing this a long time.  I know where every holiday

23  is, all of them.

24  MR. HELFAND:  Erev, E-R-E-V, starts on sundown on the

13:59  25  21st, so I would need to end a little early, but then that

1  might work with us doing pretrial matters and jury selection.

2          THE COURT:  Here is my feel.  Okay?  I'm leaving town

3  on the 25th, and so we would have to finish this before the

4  25th.  I'm going -- we've got time.  You realize that -- you

5  know, Tuesday morning, we could start picking the jury.  Who

6  knows how long that will take.  You have got the whole weekend

7  to do the objections that you are talking about.  You can, you

8  know, work the weekend, like I do sometimes, and we pick the

9  jury Tuesday.  We see where we are.  We put a witness on, if we

10 have got time on Tuesday.  Then Wednesday -- I'm still not

11 clear on this Wednesday/Thursday thing.  You would have

12 witnesses, would you not, some witnesses?

13         MR. PITTMAN:  Wednesday morning.

14         THE COURT:  Yeah.

15         MR. PITTMAN:  But not Wednesday afternoon.

16         THE COURT:  I'm really easy on these things.  I'm not

17 like some of these guys.  If we have to quit early or start

18 late or do something because somebody has got something and

19 can't get here, I'm not going to prevent you from putting your

20 witnesses on, if they are legally allowed to testify.

21         MR. PITTMAN:  Your Honor, what we would rather do,

22 with the Court's permission -- you know, as you know, this is a

23 case that is being watched by the Fifth Circuit, and it may be

24 watched by some of the justices who rendered the ruling.  This

25 is a case -- I don't know what their appeal plans are, but

certainly on behalf of the plaintiffs, you know, depending on the summary judgment order, we have to make decisions as to what to do. And so with all due respect to the Court, if we could have an opportunity to look at the Court's ruling on summary judgment, we may decide to brief the issue of whether the Court will allow us to submit questions to the jury. That way, we are trying the same case. It goes up. Your Honor can JNOV it. It goes up, but we have got a full record for the Court, but we would at least like the opportunity to brief the issue. So if Your Honor could give us next week to look at the motions --

THE COURT: I'm really not going to do that. Okay? I want to get as much of this trial in. If we have to take recesses, quit early, start late, something like that, we will do that. But we have got time on the front end that we can utilize so that we could all be, you know, doing what we need to do by week after next.

MR. PITTMAN: If we did all day Tuesday and half of Wednesday, could we have the remaining part of the week off?

THE COURT: I mean, depending on how many witnesses we get. You have got a list of witnesses. They have got a list of witnesses. I would like the witnesses that can be here to testify for the jury -- I mean, why can't we do that? What is the problem? I'm not understanding.

Yes, sir?

14:02    1          MR. KITA:  The Court hasn't entered its summary

         2    judgment against the City yet.  I realize that --

         3          THE COURT REPORTER:  I can't hear you, Mr. Kita.

         4          MR. KITA:  You haven't entered the order granting the

14:02    5    City's MSJ yet.

         6          THE COURT:  No.

         7          MR. KITA:  And it just occurred in talking that the

         8    evidence that would go forth in the claims against the City are

         9    the same witnesses, the same people, giving the exact same

14:02   10    testimony that they would give.  The only question is whether

        11    the jury gets to answer questions about it.

        12          Now, obviously we disagree about, you know,

        13    whether it should be granted or not, but my thought is this

        14    case has been pending for seven years, you know, and we never

14:02   15    want to try it again.  And if the Court would consider anyway

        16    holding its order granting the MSJ, it can always grant a

        17    directed verdict or a JNOV in the event the jury were to return

        18    a finding of liability against the City.  But at the end of the

        19    day, like Nick said, we have a full record.  The verdict will

14:03   20    be rendered.  It can be affirmed.  But the point being is we

        21    will never have to come back.

        22          In the event that the Fifth Circuit were to find

        23    that the City shouldn't receive summary judgment, we have to

        24    come back and do it all over again.

14:03   25          MR. HELFAND:  I appreciate both of you allowing me to

14:03   1   respond.  Judge, that's just a fallacious argument.  For the

        2   same reasons in the motions to bifurcate, no lawyer should

        3   reasonably stand before this Court and say the same evidence on

        4   the Fourth Amendment violation by an individual is evidence

14:03   5   that would support the claim against the City.  Except if that

        6   is the plaintiffs' position, it only seems to strengthen the

        7   decision that the Court has made.

        8           If the same evidence is the only evidence they

        9   would have against the City, then clearly Your Honor has made

14:04  10   the right decision.  But what this really is is an effort as a

       11   trap door to bring in things that would otherwise necessitate a

       12   bifurcated trial.  So I don't think that this -- I apologize.

       13   I can't remember Matt's last name, and I don't want to be rude.

       14   But I don't think he can credibly tell the Court of any

14:04  15   evidence against the City that would be evidence against

       16   Cotton.  And obviously that's the reason most courts bifurcate.

       17   So if Your Honor were even entertaining the possibility of

       18   doing that, you would have to go back to the motion to

       19   bifurcate, which then brings us back to where we are, which is

14:04  20   we shouldn't be having a trial against Cotton and the City in

       21   the same trial, so none of that really goes to our scheduling

       22   issue.

       23           I would say one other thing if I could, which is

       24   I don't believe the assertion that the Fifth Circuit is

14:04  25   watching.  I thought they were looking at all my trials, but I

14:04    1   hope that they look at them when they are presented to them and

         2   they don't look at them when they are not. I think they have

         3   plenty of things to do right now. I couldn't presume for a

         4   second to know what any of the justices will do, but I know my

14:05    5   mother would be proud if they were looking at my case when it

         6   was going on. But the fact of the matter is, Judge, that what

         7   Your Honor has proposed seems to fit that paradigm, which is

         8   Your Honor just proposed to expand the time for this trial by

         9   starting on Tuesday and giving us all the way up until the 24th

14:05   10   with breaks necessary to accommodate witnesses, and that seems

        11   to be -- what Fifth Circuit judge or Supreme Court justice

        12   could quarrel with that, respectfully?

        13          MR. PITTMAN: Your Honor, with respect to whether the

        14   Fifth Circuit is observing, I have been to enough Fifth Circuit

14:05   15   judicial conferences that I know judges talk about previous

        16   rulings, so I can't speculate whether they are following it or

        17   not. I'm just assuming that because of the notoriety this case

        18   has gotten from the Supreme Court that they may be looking at

        19   it. There are some -- the opinions that Mr. Kita and I read

14:06   20   from the Fifth Circuit certainly suggest that there is even a

        21   passing interest in it. So that's the purpose for us

        22   requesting that. But, Your Honor, we would like at least to

        23   have the opportunity to brief the issue. The Court can deny it

        24   or not, but at least allow us to brief the issue. They can

14:06   25   respond to it, allow us to look at the summary judgment ruling.

1    If you want to give us a draft of it, we can look at it --

2    THE COURT:  I can give it to you this afternoon.

3    MR. PITTMAN:  The other thing, Your Honor, I have just

4    been reminded by my co-counsel that there are some

14:06  5    congressional hearings next week that the Tolans and Mr. Crump

6    need to be at.  These are taking place in Washington, D.C.,

7    with some of the congressional people so that's one of the -- I

8    was telling you that some of the witnesses can't be available,

9    but Ms. Tolan and Mr. Tolan and Mr. Crump have to be there to

14:06  10   testify.

11   THE COURT:  What day?  Which day?

12   MR. CRUMP:  On Friday.  They are leaving on Thursday.

13   THE COURT:  Friday, the 18th, leaving on the 17th?

14   MR. CRUMP:  Yes, ma'am.

14:07  15   THE COURT:  I don't think that would be a problem.  We

16   can recess and I can do my criminal docket on Friday.  That

17   wouldn't be a problem.  I don't know what time their plane

18   leaves, but we could --

19   MR. CRUMP:  It leaves Thursday afternoon.

14:07  20   THE COURT:  Thursday afternoon.  Okay.  So we could

21   recess and they would have time to get to the airport, go to

22   Washington and testify and come back and resume the trial.  I

23   mean, I just want to squeeze in as much testimony as we can so

24   we are all finished by the 25th.

14:07  25   MR. PITTMAN:  It is possible we could finish by the

14:07  1  25th.  We can certainly streamline our case.  If Your Honor

2  decides not to follow our suggestion in allowing the jury to

3  hear all of it, you know, we can get our case streamlined, if

4  we are going to pick a jury on Monday.  Do opening

14:07  5  statements --

6         THE COURT:  Tuesday.  Oh, you are talking about

7  Monday, the 21st?

8         MR. PITTMAN:  Yes, Your Honor.

9         THE COURT:  I'm telling you -- you know, when you said

14:08  10  eight days to try this case, I thought, it's not going to

11  happen.  There is no way you can try this case in eight days.

12  I have spent so much time on this case, you can't even imagine

13  it, and I know you have spent 200 times the time I spent on

14  this case.  It's a complicated case.  It's very complicated

14:08  15  with lots of concepts and stuff, and I just don't see how we

16  can pick a jury and think we are going to get out of this with

17  four days of testimony.  I mean, I just don't think it is going

18  to be possible.  We may not even get a jury the first day.  We

19  may have to bring back another panel to fill up the jury.

14:08  20         MR. PITTMAN:  That's why we made the decision so that

21  Your Honor didn't have to have two eight-day trials for

22  Mr. Cotton if it comes back.

23         THE COURT:  Let me tell you something:  I have a lot

24  of faith in my opinion and I'm sure when you read it, you will

14:08  25  just want to rip it apart and think, this idiot doesn't even

14:08 1 understand the situation. But I have a lot of faith in it.

2 And I think when you read it, you will see what I'm talking

3 about. I hope you will. Maybe not. I hope you will. So I

4 don't think there is going to be a trial -- if you appeal it to

14:09 5 the Fifth Circuit and the Fifth Circuit slaps my hand again,

6 sobeit. And I will just try it again, but --

7      MR. KITA: We know that that suggestion was really

8 meant for judicial efficiency, not a backdoor way of getting in

9 extra evidence.

14:09 10      THE COURT: No, no, no. I understand. No, I

11 understand, but, I mean, I think I'm right on this. But I

12 thought I was right the first time so...

13      MR. HELFAND: The only thing I would offer is the

14 Fifth Circuit did not slap Your Honor's hand and no one has

14:09 15 ever said that you were wrong.

16      MR. PITTMAN: Just one last try at it. We can start

17 that following week. If Your Honor is just taking the 25th

18 off, then we can take that Friday off. We can finish that

19 following week.

14:09 20      THE COURT: I'm going to -- you won't believe this,

21 but somebody has asked me to do a speech. So I'm going to be

22 doing a speech that next week, so I don't think that would

23 work. That's why I'm trying to push this -- utilize the time

24 we have got is all I'm saying.

14:10 25      MR. PITTMAN: We are trying to get all of one case in

1  in the same week as opposed to having to split our case.

2          THE COURT:  I understand, but it is not going to work

3  that way so we are going to start on Tuesday morning.  Each of

4  y'all have submitted some jury questionnaires, which makes me

5  think that you are not familiar with our jury questionnaires

6  that we have, that we utilize for every jury.

7          MR. PITTMAN:  I am, Your Honor.

8          THE COURT:  I'm sorry?

9          MR. PITTMAN:  I said I am, but we had some additional

10  questions on there.

11          THE COURT:  I know, but I don't like to give the

12  juries these really detailed things unless it is called for and

13  I don't really think this is called for.  You can cover this.

14  I let the lawyers do voir dire, a little bit of voir dire, not

15  all day, not the Joe Jamail forum.  Not all day, but you can

16  ask those questions to the panel.

17          MR. PITTMAN:  Your Honor, the problem with that I

18  found -- you know, I just found in a case like this, out of the

19  hundreds that I have tried, these type cases tend to lend

20  themselves more to a philosophical belief than a contract case

21  or an intellectual property case that I try.  So the way a

22  person views things and perceives things, both their political

23  affiliation and other things can come to bear in opinions on

24  cases like this.  That's why we submitted some additional

25  questions in addition to the ones that the Court already uses.

14:11  1  But there were some additional ones that, again, would allow us

2  to find out whether these jurors hold certain biases that would

3  prevent us from walking to the jury and saying, "Who are your

4  favorite people?  What was the last book you read?"  That is

14:12  5  telling of a lot of things, what a person reads and, you know,

6  whether they view themselves as extremely conservative,

7  ultraconservative, very liberal.  So I think the questionnaire

8  would allow us to know without either side, you know,

9  approaching the jury and invading their personal belief.

14:12  10  THE COURT:  How do you think they are going to feel

11  when they are stuck up there in the jury selection room filling

12  out these eight-page forms?

13  MR. PITTMAN:  I'm assuming they will figure it's part

14  of their civic duty.

14:12  15  THE COURT:  They don't like to fill out one-page

16  forms, I'm telling you.

17  MR. HELFAND:  May I speak?

18  THE COURT:  Sure.

19  MR. HELFAND:  We did not submit a questionnaire.  We

14:12  20  did submit what our proposed questions would be as part of the

21  voir dire.  I don't know what Mr. Pittman's experience has been

22  here.  I hear what he's saying.  I have tried a number of law

23  enforcement use-of-force cases, including a number of deadly

24  force cases.  And I can assure Mr. Pittman, as the Court has

14:13  25  probably observed, that the venire panel is forthcoming, open

14:13   1   about the issues.  And I don't think we will have any trouble

        2   picking a jury with a reasonable amount of time for voir dire

        3   conducted by the Court and counsel.

        4               But if there is going to be a questionnaire --

14:13   5               THE COURT:  I just don't believe in those extra

        6   questionnaires, so you are just going to have to do it on your

        7   feet.  You are going to put your heads together and see if you

        8   can make agreement on some of these.  And other than that, I

        9   will see y'all on Tuesday morning at 9:00, unless you have

14:13  10   something else?

       11               MR. HELFAND:  Thank you, Judge.

       12               MR. PITTMAN:  Thank you, Your Honor.

       13               THE COURT:  Thank you very much.

       14        *(Proceedings concluded at 2:13 p.m.)*

       15                              * * * *
            *I certify that the foregoing is a correct transcript from*
       16   *the record of proceedings in the above-entitled cause.*

       17   *Date: October 25, 2015*

       18

       19                     */s/ Mayra Malone*
                              ---------------------------------------
                              *Mayra Malone, CSR, RMR, CRR*
       20                     *Official Court Reporter*

       21

       22

       23

       24

       25